STATE OF MAINE *vs.* JOHN K. CROOKER.

York.   Opinion December 19, 1923.

*When three respondents are indicted and tried jointly and have separate counsel, and*
*one respondent takes the stand in his own behalf and in his testimony*
*incriminates another of the three, the counsel for that other*
*is entitled to cross-examine him.*

On appeal by respondent.  The respondent, Crooker was indicted and tried jointly with one Pettis and one Chapman for extortion of money under R. S., Chap. 120, Sec. 21.  The respondents were tried together.   During the progress of the trial, after the State's case had been presented, counsel for the respondent, Crooker, requested the privilege of cross-examining the respondent, Pettis, one of the co-respondents, which request was denied by the presiding Justice and exceptions by counsel for Crooker entered.   Counsel for Crooker also filed a motion for a mistrial which was denied and an appeal taken. Appeal sustained.  New trial granted.

The case is stated in the opinion.

*Edward S. Titcomb, County Attorney*, for the State.

*Joseph E. F. Connolly*, for respondent.

SITTING:  CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

CORNISH, C. J.  The respondent Crooker, was jointly indicted with two others, Charles Pettis and Milton C. Chapman, under R. S., Chap. 120, Sec. 21, on the charge of threatening to accuse one Newton of the offense of operating an automobile upon a public highway in Saco at an unlawful rate of speed with intent to extort money from him.   Crooker was a member of the State Highway Police at the time of the alleged crime, the other men were private citizens.   Each respondent pleaded not guilty and was represented at the trial by separate counsel.   A motion was made for a separate trial of each defendant.  This was denied by the court in the exercise of its judicial discretion.

The course of the trial was as follows:   The State introduced its evidence to prove that Newton with five other boys had come from their home in Manchester, N. H., on the day in question, October 21, 1922, to Portland to attend a football game, and while on their return and within the limits of York County they were stopped by the respondent, threatened with prosecution for exceeding the speed limits, and together they contributed forty dollars for release from arrest, which money Crooker, Pettis and Chapman took and divided among themselves, and the boys were allowed to proceed on their journey.   The State's evidence came from Newton and another of the boys and Mr. Shorey, the State's chief enforcing officer of the Motor Vehicle Law.   Each of the State's witnesses was cross-examined by the respective attorney for each respondent.   The State rested and after an opening by each attorney for the respondents, the respondents in turn offered their defense, each taking the stand in his own behalf, first Crooker, then Pettis and then Chapman.   Pettis also introduced one Cressey as a witness.

Each respondent was cross-examined by the County Attorney. Pettis in the course of his direct examination gave strong evidence inculpating his co-respondent Crooker.   Crooker's counsel then moved that the court direct a mistrial in the case "because of the prejudice which may exist in the mind of the jury after the testimony of this witness, which we cannot eradicate because he is not called as a State's witness, we cannot cross examine, we cannot meet." The motion was denied and an exception noted and allowed.

Counsel for Pettis then introduced Cressey as a witness.   At the conclusion of his testimony, cross-examination by the State being waived, counsel for Crooker addressed the court as follows:   "I understand this witness, as the former, I would not have the right of cross-examination?"  ..

"THE COURT:  I am reserving and preserving the right of rebuttal when the times comes."   Counsel then renewed his motion for mistrial on the same grounds as before, and was granted an exception, the court adding; "Your right of rebuttal is being preserved if you desire it."   Counsel:  "I can't quite get the bearings on that.   I am just debating now about calling these very witnesses in our own behalf.   I don't know just how I will work out of it." THE COURT: "Take it under consideration.  I am simply giving you advice that I do not mean to preclude you in any fair element of

the trial. As far as your rebuttal is concerned, you will still be regarded as having a right to rebuttal and in that behalf will be freely, fully and fairly heard in rebuttal."

Crooker was later recalled and testified briefly, on rather unimportant points. Each counsel for respondents argued in behalf of his client and the County Attorney for the State. The presiding Justice then charged the jury, and instructed them that the situation was the same "as though the cases had been tried separately, each independently of the other, and the State must maintain its case against each respondent here, regardless of the case of the other."

The jury acquitted Chapman and found both Crooker and Pettis guilty.

Counsel for Crooker did not preserve his rights under a bill of exceptions, but filed a motion for a new trial with the presiding Justice, incorporating the usual reasons, that the verdict was against law and evidence, and in addition the grievance that he was denied the right of cross-examination of Pettis and Cressey. The motion was denied, the respondent appealed, and as the offense was a felony the appeal is properly before this court. R. S., Chap. 136, Sec. 28.

The question of law involved is of novel impression, and may be put sharply in this form: In case of the indictment and trial of A, B and C jointly, and B takes the stand in his own behalf, is interrogated by his own counsel and gives testimony clearly incriminating A, has A's counsel the right to cross-examine B, or is cross-examination limited to the attorney for the State?

We think, both upon principle and authority, that A's counsel has such legal right under the circumstances stated, and that the right of cross-examination is not confined to the State's attorney.

It is a fundamental rule of the English common law, embodied in both the State and Federal Constitutions as a part of the declaration of rights, that in all criminal prosecutions the accused shall have and enjoy the right to be confronted by the witnesses against him. Constitution Maine, Article I., Section 6; Amendment VI. to Constitution U. S. To be confronted by the witnesses against him does not mean merely that they are to be made visible to the accused so that he shall have the opportunity to see and to hear them, but it imports the constitutional privilege to cross-examine them. The right of cross-examination is a substantive right and a most valuable and important one. By it the accused can test the interest,

prejudice, motive, knowledge and truthfulness of the witness, and nothing can be substituted for it. As was said by this court in an earlier case: "The object of this constitutional provision is to guard the accused in all matters, the proof of which depends upon the veracity and memory of witnesses, against the danger of falsehood or mistake, by bringing the witnesses when they give their testimony as to such matters face to face with him." *State* v. *Frederic*, 69 Maine, 400. The constitutional right of confrontation is preliminary to and but another name for the right of cross-examination.

But is this right to be limited to those witnesses called by the prosecution? Are they the only witnesses against him? Undoubtedly in the vast majority of cases they are and the peculiar question now under discussion does not often arise. The object of the constitutional provisions is not protection against any particular individual or against the person called by any particular party, but against adverse testimony from whatever source it may come. Hence it is that an attorney is allowed to cross-examine his own witness, one summoned and offered by himself, if such witness proves adverse and hostile. *State* v. *Benner*, 64 Maine, 267. The reason for this is that such witness is in fact adverse in interest and sympathy to the interrogating party. Truth is the desired goal, and to elicit truth it may be as necessary to cross-examine one's own witness as that of the adversary.

Why should not the same principle apply with equal if not with greater force to the cross-examination of a co-defendant B who may be endeavoring to incriminate A, and thereby through self-interest to exculpate himself? Must A remain powerless and helpless under the adverse testimony of B, simply because B has not been summoned by the State but appears as a witness in his own behalf? Does the mere fact of who calls the witness provide the test or must it not, in the interests of justice, be the character of the evidence itself which gives the constitutional right? The spirit of the common law, of our constitution and of what might be termed the Anglo-Saxon atmosphere of fair play require that the accused shall not be deprived of this right. It is not a mere privilege to be granted or withheld at the discretion of the court, but a substantive right possessed by the accused, and while the court may, in the exercise of reasonable discretion, limit the scope and extent of cross-examination, it cannot absolutely deny it to one entitled to it.

· Such denial might lead to a strange miscarriage of justice. In any case the prosecuting attorney would not naturally feel called upon to weaken or break down the evidence of an accused party who was testifying against his co-respondent. In so much the evidence is aiding the prosecution. And an extreme case can be imagined where B is willing either to testify as a witness for the State or to take the stand in his own behalf according to the suggestion of the prosecuting attorney. If in the former case he could be cross-examined by counsel for A alone, and in the latter only by the prosecuting attorney, it is not difficult to anticipate the suggestion of the prosecuting officer. A would be remediless. We do not mean to imply that any such situation developed in this case. It did not. But we employ this as an illustration of the limit to which the denial of cross-examination might lead.

We are therefore of opinion that under these peculiar circumstances in order to do justice and to fully protect the rights of A, he should be given the right of cross-examination of B, who has sought to inculpate him.

In the case at bar the right to rebut Pettis' testimony was granted to Crooker, but that did not supply the place of cross-examination. Rebuttal merely arrays testimony against testimony. Cross-examination seeks to go further and weaken or destroy the testimony on the other side. Nor did the instructions of the court in the charge to the effect that each respondent must be tried on the evidence against him irrespective of the evidence against the others, accord to Crooker his full rights, especially as the court in charging on the Pettis branch of the case quoted at some length Pettis' testimony implicating Crooker. In our opinion Crooker has not received the full protection guaranteed by the constitution, as a matter of principle independent of authority.

Decisions on this question are few. In *Commonwealth* v. *Mullen et als.*, 150 Mass., 394, the Law Court sustained a ruling made by the presiding Justice permitting the defendant Mullen who offered himself as a witness, to be cross-examined by counsel for the co-defendants as to matters material to their client in addition to the cross-examination by the district attorney. "This necessarily resulted from the position in which Mullen had placed himself in becoming a witness" is the language of the opinion.

In *Rex* v. *Hadwen et al*, L. R., 1 K. B., Div. 1902, Page 882, this precise question was decided by the High Court of Justice. The opinion was rendered by Lord Alverstone, C. J., and is so directly in point, and is based on such strong reasoning, that we quote the following:

"The question for decision is, whether, where two prisoners are jointly indicted and are separately defended, and one prisoner elects to be sworn and to give evidence on his own behalf, and in the course of his evidence he gives evidence inculpating the other prisoner, counsel for the latter can cross-examine him, or whether he can only be cross-examined by counsel for the prosecution. Before considering how far the question is governed by authority, it is important to point out, that, if the law does not prohibit it, it is obviously in the interests of justice that the cross-examination of one prisoner by counsel for the other prisoner, should be allowed, because, where the evidence is very strong against both prisoners, counsel for the prosecution might not think it his duty to cross-examine the prisoner so strictly as counsel for the other prisoner would. Further, inasmuch as a prisoner in giving evidence may raise some new point inculpating the other prisoner as to which counsel for the prosecution has had no notice and has no instructions, counsel for the other prisoner would probably be able to cross-examine more effectively than counsel for the prosecution could do. There may also be cases in which the Judge's direction to the jury that evidence given by one prisoner is not evidence against the other, would not in the absence of cross-examination be an effective protection to the other prisoner. Therefore it is in the interests of justice that every opportunity of testing by cross-examination a prisoner's evidence against another prisoner should be given." The learned Chief Justice cites two cases where the same right to cross-examine had been previously upheld, *Reg.* v. *Woods*, 6 Cox C. C., 224, and *Reg.* v. *Burditt*, 6 Cox C. C., 458. In the latter case, Jervis, C. J., said that "the prisoner should certainly have been allowed to cross-examine and reply because the witness called by Burditt gave evidence to criminate him and that evidence became tacked, as it were, to the case for the prosecution." The court in *Rex* v. *Hadwen* then went on to discuss the effect of the English Criminal Evidence Act of 1898, and held that the common law rule in this respect was neither abrogated nor modified by that act and the right of cross-examination still obtained.

We are, therefore, of opinion, both upon principle and authority, that in the case at bar the respondent Crooker should have been given the right of cross-examining Pettis upon the testimony incriminating Crooker, which was virtually "tacked on to the case for the prosecution." It was damaging to Crooker if believed, and the denial of cross-examination cannot be regarded as harmless error. On the other hand, the testimony of Cressey introduced as a witness by and for Pettis was unimportant and no rights of Crooker were really sacrificed in denying his cross-examination.

One other point needs mention. Crooker's exceptions although taken were not fully preserved. Can his legal rights be considered by this court on the motion filed in his behalf and his appeal from the overruling thereof? We think they can, under the authority of *Pierce* v. *Rodliff*, 95 Maine, 346, where the court say: "This question would have been more appropriately presented in the plaintiff's bill of exceptions; but while the practice of raising questions of law upon motion is not to be encouraged, in cases where manifest error in law has occurred and injustice would otherwise inevitably result, the law of the case may be examined upon a motion, and if required, the verdict be set aside as against law." See also *Simonds* v. *Maine T. & T. Co.*, 104 Maine, 440. Especially is this true where as here the motion itself specifically sets out the alleged errors in law and the prejudice and injury caused thereby. The cited cases were civil actions, but we think the same rule should apply to criminal prosecutions, although as was said in *Pierce* v. *Rodliff*, the practice is not to be encouraged.

The verdict was clearly wrong as against the law.

*Appeal sustained.*
*New trial granted.*