MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2015 ME 57
Docket:         Aro-14-12
Argued:         October 28, 2014
Decided:        May 7, 2015

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.[*]
Majority:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HJELM, JJ.
Dissent:        JABAR, J.

STATE OF MAINE

v.

CHAD H. TOZIER

MEAD, J.

[¶1]  The State of Maine appeals from an order entered by the trial court (*Hunter, J.*) granting Chad H. Tozier's motion to exclude a self-contained breath-alcohol test result from evidence based on the court's determination that the State failed to produce a qualified witness as required by 29-A M.R.S. § 2431(2)(D) (2013).[1]  We vacate the judgment.

## I.  BACKGROUND

[¶2]  The following facts are taken from the record and are not in dispute. On August 19, 2012, a police officer certified to operate a self-contained

---

[*]  Silver, J. sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

[1]  Title 29-A M.R.S. § 2431(2) (2013) has since been amended, but not in any way that affects our analysis.  P.L. 2013, ch. 459, § 3 (effective Mar. 12, 2014) (codified at 29-A M.R.S. § 2431(2) (2014)).

2

breath-alcohol testing apparatus known as an Intoxilyzer used the device to test Tozier's breath-alcohol content. Before testing Tozier's breath, the officer ran a calibration check. He then obtained two separate breath samples, and the machine reported Tozier's breath-alcohol content as 0.18 grams of alcohol per 210 liters of breath. The officer issued Tozier a uniform summons and complaint charging him with criminal operating under the influence (Class D) pursuant to 29-A M.R.S. § 2411(1-A)(A) (2014).

[¶3]   On September 21, 2012, the State of Maine charged Tozier by complaint in the District Court (Houlton) with criminal operating under the influence. Tozier requested a jury trial, and the case was therefore transferred to the Superior Court (Aroostook County). On or about October 29, 2013, Tozier sent a ten-day notice pursuant to 29-A M.R.S. § 2431(2)(D) requesting that the State produce a qualified witness to testify at his trial.[2]   In response, the State

---

[2]  Title 29-A M.R.S. § 2431 (2013) provides:

**1. Test results.** Test results showing a confirmed positive drug or metabolite presence in blood or urine or alcohol level at the time alleged are admissible in evidence. Failure to comply with the provisions of sections 2521 and 2523 may not, by itself, result in the exclusion of evidence of alcohol level or confirmed positive drug or metabolite presence, unless the evidence is determined to be not sufficiently reliable.

**2. Analysis of blood, breath and urine.** The following provisions apply to the analysis of blood, breath and urine, and the use of that analysis as evidence.

**A.**   A person certified in accordance with section 2524 conducting a chemical analysis of blood, breath or urine to determine an alcohol level or drug concentration may issue a certificate stating the results of the analysis.

**B.** A person qualified to operate a self-contained, breath-alcohol testing apparatus may issue a certificate stating the results of the analysis.

**C.** A certificate issued in accordance with paragraph A or B, when duly signed and sworn, is prima facie evidence that:

**(1)** The person taking the specimen was authorized to do so;

**(2)** Equipment, chemicals and other materials used in the taking of the specimen were of a quality appropriate for the purpose of producing reliable test results;

**(3)** Equipment, chemicals or materials required to be approved by the Department of Health and Human Services were in fact approved;

**(4)** The sample tested was in fact the same sample taken from the defendant; and

**(5)** The alcohol level or drug concentration in the blood of the defendant at the time the sample was taken was as stated in the certificate.

**D.** With 10 days written notice to the prosecution, the defendant may request that a qualified witness testify to the matters of which the certificate constitutes prima facie evidence. The notice must specify those matters concerning which the defendant requests testimony. The certificate is not prima facie evidence of those matters.

**E.** A person drawing a specimen of blood may issue a certificate that states that the person is in fact duly licensed or certified and that the proper procedure for drawing a specimen of blood was followed. That certificate, when signed and sworn to by the person, is prima facie evidence of its contents unless, with 10 days' written notice to the prosecution, the defendant requests that the person testify.

**F.** Evidence that the breath or urine sample was in a sealed carton bearing the Department of Health and Human Services' stamp of approval is prima facie evidence that the equipment was approved by the Department of Health and Human Services.

**G.** The results of a self-contained breath-alcohol apparatus test is prima facie evidence of an alcohol level.

**H.** Evidence that the self-contained breath-alcohol testing equipment bearing the Department of Health and Human Services' stamp of approval is prima facie evidence that the equipment was approved by the Department of Health and Human Services.

**I.** Evidence that materials used in operating or checking the operation of the self-contained breath-alcohol testing equipment bore a statement of the manufacturer or of the Department of Health and Human Services is prima facie evidence that the materials were of the composition and quality stated.

4

produced the officer who administered the Intoxilyzer test at trial, but there was no other expert available.

[¶4] As the trial was about to begin on November 12, 2013, Tozier filed a motion in limine to exclude the breath-alcohol test result from evidence. The court granted Tozier's motion and issued a final order declaring that the officer was not qualified as an expert to testify as to the "appropriateness of the quality of the equipment, the chemicals or other materials involved." The State received approval from the Attorney General to appeal and filed a timely notice pursuant to 15 M.R.S. § 2115-A (2014).

## II. DISCUSSION

[¶5] The State argues that the court improperly excluded the breath-alcohol test result because the statute does not require the State to produce expert testimony in order to have the results of an Intoxilyzer admitted into evidence. The State contends that subsection D of 29-A M.R.S. § 2431(2) is intended for rural areas that rely on part-time reserve officers who are not certified to operate a breath-alcohol testing apparatus. In the scenario suggested by the State, in the

---

**J.** Transfer of sample specimens to and from a laboratory for purposes of analysis by certified or registered mail complies with all requirements regarding the continuity of custody of physical evidence.

**K.** The prosecution is not required to produce expert testimony regarding the functioning of self-contained breath-alcohol testing apparatus before test results are admissible, if sufficient evidence is offered to satisfy paragraphs H and I.

ordinary case, the officer who operated the Intoxilyzer would issue a certificate containing the results of the test, and then only the officer who conducted the traffic stop would have to testify. If subsection D were invoked, the officer who performed the breath-alcohol test would then have to testify as well. In response to Tozier's arguments, the State additionally argues that the Confrontation Clause of the United States Constitution is not implicated when the declarant who administered the breath-alcohol test is available to testify. We examine the State's claims in turn.

A.    Qualified Witness

[¶6]    We review questions of statutory interpretation de novo. *State v. Lowden,* 2014 ME 29, ¶ 13, 87 A.3d 694. "When interpreting a statute, we look first to the plain meaning in order to discern legislative intent, viewing the relevant provision in the context of the entire statutory scheme to generate a harmonious result." *Id.* ¶ 14. We strictly construe criminal statutes "to avoid absurd, illogical, or inconsistent results." *State v. Jones,* 2012 ME 88, ¶ 6, 46 A.3d 1125 (quotation marks omitted). "Nothing in a statute may be treated as surplusage if a reasonable construction applying meaning and force is otherwise possible." *Lowden*, 2014 ME 29, ¶ 14, 87 A.3d 694 (quotation marks omitted).

[¶7] The Maine Legislature has created a set of evidentiary rules, which can be found at 29-A M.R.S. § 2431, to govern blood, breath, and urine test results in

operating under the influence (OUI) cases. Pursuant to subsection 1, such test results are generally admissible in evidence. Subsection 2 contains subsections A through K, which pertain to the use of analysis of blood, breath, and urine as evidence. Pursuant to subsection B, a person qualified to operate a self-contained breath-alcohol testing apparatus may issue a certificate stating the results of the test analysis. Pursuant to subsection C, when such a certificate is issued, and duly sworn and signed, it is prima facie evidence of the following:

> **(1)** The person taking the specimen was authorized to do so;
>
> **(2)** Equipment, chemicals and other materials used in the taking of the specimen were of a quality appropriate for the purpose of producing reliable test results;
>
> **(3)** Equipment, chemicals or materials required to be approved by the Department of Health and Human Services were in fact approved;
>
> **(4)** The sample tested was in fact the same sample taken from the defendant; and
>
> **(5)** The alcohol level or drug concentration in the blood of the defendant at the time the sample was taken was as stated in the certificate.

29-A M.R.S. § 2431(2)(C). Thus, unless a defendant makes a demand pursuant to section 2431(2)(D), no live witness is required to testify in order for the test results and the facts set forth in subsection C to be admitted in evidence.

[¶8]   The issue here involves the effect of subsection D on subsection C. Subsection D states:

> With 10 days written notice to the prosecution, the defendant may request that a *qualified witness* testify to the matters of which the certificate constitutes prima facie evidence.  The notice must specify those matters concerning which the defendant requests testimony.  The certificate is not prima facie evidence of those matters.

29-A M.R.S. § 2431(2)(D) (emphasis added).  "[Q]ualified witness" is not defined in the statute.

[¶9]   The trial court interpreted "qualified witness" to be synonymous with "expert witness."  The court reasoned that if subsection D did not require an expert witness, then subsection K would essentially nullify subsection D.  Subsection K provides: "The prosecution is not required to produce expert testimony regarding the functioning of self-contained breath-alcohol testing apparatus before test results are admissible, if sufficient evidence is offered to satisfy [subsections] H and I." 29-A M.R.S. § 2431(2)(K).

[¶10]   Apart from subsection D, the term "qualified witness" is not used anywhere in section 2431.  Subsection E is another ten-day notice provision that applies only to blood specimens, but subsection E explicitly states that the person who issues the certificate is the one who is required to testify by the ten-day notice. It is worth noting that there is no provision within section 2431 that explicitly requires production of an expert witness or expert testimony.  The term "expert" is

8

used in subsection K, but only to establish that an "expert" is not required in particular circumstances.

[¶11] "If the statutory language is ambiguous, meaning that it is reasonably susceptible to multiple interpretations, or is silent on a particular point, we will then consider other indicia of legislative intent including the purpose of the statute." *Griffin v. Griffin,* 2014 ME 70 ¶ 18, 92 A.3d 1144 (quotation marks omitted). Subsection K was added to section 2431(2) in 1998[3] and the legislative history contains one relevant letter sent from the District Attorney for District Six to the Department of Motor Vehicles. The letter stated a request:

> [A]mend sub-section (2)(D) to make explicit what is now implicit, but ignored by some judges: that the prosecution need not ordinarily produce expert testimony regarding the functioning of self-contained, breath-alcohol testing apparatus, before test results are admissible. Some Superior Court Justices refuse to allow admission of any test result if we do not produce an expert (such as Bob Morgner) on demand. Thus, add a sentence at the end of paragraph (2)(D) as follows: "The prosecution is not required to produce evidence of the functioning of self-contained, breath-testing apparatus before test results are admissible, if sufficient evidence is offered to satisfy subsections 2(G), 2(H), and 2(I)." I realize my language is cumbersome and perhaps much more simple language will accomplish this result. But some change is needed. We now regularly pay for an expert in intoxilyzer cases, and this is a totally unnecessary expense.

Letter from Geoffrey Rushlau, Dist. Attorney, Me. Dist. Six, to William Dowling, Dep't of Motor Vehicles (Jan. 20, 1998). Although the suggested language was

---

[3] P.L. 1997, ch. 776, § 45 (effective July 9, 1998).

altered slightly and was added as a separate provision instead of being attached to subsection D, we think that it is clear that the addition of the language in subsection K was meant to clarify that expert testimony is not required as a prerequisite to such evidence being admitted.

[¶12]  Section 2431 concerns only evidence and evidentiary alternatives in OUI cases and does not establish or embellish any elements of the OUI offense outlined in 29-A M.R.S. § 2411.  *See State v. Kennedy*, 2002 ME 5, 788 A.2d 174. In *Kennedy*, the defendant objected to the admission of a breath-alcohol test result because the officer who conducted the test did not certify it.  *Id.* ¶ 5.  The court admitted the test result because the officer who had administered the test was available to testify.  *Id*.  The officer then testified that he was certified to administer the test, he waited the appropriate amount of time, the defendant blew a good sample, the machine was approved by the Department of Health and Human Services, and the test result was 0.19.  *Id.* ¶ 9.

[¶13]  We determined that the testimony provided by the officer in *Kennedy* addressed the substance of all five evidentiary requirements listed in 29-A M.R.S. § 2431(2)(C).  We stated that the five elements of subsection C "do not establish specific findings that are 'required' as a prerequisite to admission of [a breath-alcohol] test result.  Rather, they provide an evidentiary basis for the

admission of [a breath-alcohol test] result without the need for the testimony of the officer when that result is certified." *Kennedy*, 2002 ME 5, ¶ 9, 788 A.2d 174.

[¶14] Taking into account the language of the statute, the legislative history of subsection K, and *Kennedy,* we conclude that the State is not required to offer expert testimony regarding the functioning of the self-contained breath-alcohol testing equipment, so long as subsections H and I are satisfied. The Department stamps of approval and/or statement of the manufacturer, as referenced in subsections H and I, provide the foundational requirements for the admission of the self-contained breath-alcohol test result in evidence. So long as the breath-alcohol testing equipment bears the required stamps of approval, the State is not required to offer expert testimony regarding the functioning of the breath-alcohol testing equipment. *See* 29-A M.R.S. § 2431(2)(K).

[¶15] Subsection (K) does apply when a ten-day notice is issued pursuant to subsection D to require the presence of a "qualified witness." That is, the defendant may demand that a witness qualified to testify to the matters that are otherwise covered by the certificate appear and testify concerning (1) his or her authorization to administer the test; (2) that the testing equipment and materials were properly stamped; (3) that the sample was in fact taken from the defendant; and (4) that the test results reflect a sample taken at the time of the test. 29-A M.R.S. § 2431(2)(C). The State provided that qualified witness here by

presenting the officer who administered the breath-alcohol test as available to testify to all of the information outlined above.[4] No "expert" witness was required.

B.    The Confrontation Clause

[¶16]    The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  We review application of the Confrontation Clause de novo.  *State v. Johnson*, 2014 ME 83, ¶ 8, 95 A.3d 621.

[¶17]  Section 2431 is a "notice-and-demand" statute, which requires that a defendant must demand a live witness if he desires to have one testify.  *See* 29-A M.R.S. § 2431(2)(D); *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 326 (2009).  In the absence of such a demand, the State may constitutionally introduce a sworn certificate in evidence without live testimony.  *Melendez-Diaz*, 557 U.S. at 326.  In *Melendez-Diaz*, the Supreme Court clarified that the Confrontation Clause applies to written documents and held that a sworn certificate reflecting the analysis of suspected drugs was admissible only if the declarant who produced the certificate also testified.  *Id.* at 308, 310-11.

[¶18]  Tozier argues that because the officer who administered the test had no training or expertise beyond that required to operate the machine, i.e., no

---

[4]  Adding further support to the State's argument that a "qualified witness" does not mean an "expert witness" such as chemist Robert Morgner, it is clear that such an expert witness would be unable to testify that the sample was in fact taken from the defendant as required by subsection C(4).

expertise to testify as to the quality of the equipment, chemicals, or other materials involved in using the machine, an expert witness who could testify to such information is required by the Confrontation Clause requirements as discussed in *Melendez-Diaz*. Tozier's argument is not persuasive.

[¶19]  In *Melendez-Diaz,* the Supreme Court discussed both a certificate produced by a lab analyst and "neutral scientific testing."  557 U.S. at 310, 318. The Court stated that "[f]orensic evidence is not uniquely immune from the risk of manipulation" and that "[a] forensic analyst responding to a request from a law enforcement official may feel pressure—or have an incentive—to alter the evidence in a manner favorable to the prosecution." *Id.* at 318.  The certificate at issue in *Melendez-Diaz* consisted of a report rendered by a laboratory analyst reflecting results he obtained after employing sophisticated laboratory analysis. *Id.* at 308.  The certificate at issue in this case, by contrast, is a piece of paper produced by a machine.  It reflects no forensic analysis by any person.  It simply reports the results generated by a self-contained breath-alcohol testing machine that has been duly certified by the Department according to statute.  The officer who operated the machine simply verifies that the machine produced this paper. The risk of improper manipulation of scientific evidence by a forensic examiner that concerned the Court in *Melendez-Diaz* is simply not present here.

[¶20]  Confrontation Clause jurisprudence is concerned with the absence of those witnesses whose actions played a role in the generation of test results.  In *Bullcoming v. New Mexico,* 131 S. Ct. 2705, 2710-11 (2011), the Supreme Court considered the admission of a report of a laboratory analyst who, like the analyst in *Melendez-Diaz,* conducted blood-alcohol testing with a gas chromatograph and rendered a report.  When the prosecution failed to produce the analyst at trial, the trial court allowed the blood-alcohol report with the analyst's conclusions to be admitted in evidence, and allowed another analyst, who was familiar with the operation of the gas chromatograph, to testify as to the laboratory's standardized testing practices.  *Bullcoming,* 131 S. Ct. at 2709.  The Court held that, because the certificate was testimonial, its admission would violate the Confrontation Clause unless the State could demonstrate that the certifying analyst was unavailable at trial and that the defendant had a prior opportunity to cross-examine the analyst.[5]  *Id.* at 2710.  The fact that the substitute witness was an expert who could have testified about standard laboratory procedures and the general scientific reliability of the testing apparatus did not affect the Court's analysis.  *See id.* at 2713.

[¶21]  *Bullcoming* reconfirms the rule of law established in *Melendez-Diaz* that the Confrontation Clause guarantees defendants the right to confront the

---

[5]  Justice Sotomayor clarified that *Bullcoming* "is not a case in which the State introduced only machine-generated results."  *Bullcoming v. New Mexico,* 131 S. Ct. 2705, 2722 (2011) (Sotomayor, J., concurring).

14

individual who creates a certificate that constitutes testimonial evidence. Unlike such a report drafted by a laboratory analyst who operates sophisticated scientific testing equipment, however, the only actions reflected in a certificate generated by a self-contained breath-alcohol machine are the internal actions of the machine itself.[6] The officer who administered the test is the only witness who could be cross-examined about the administration of the test and whether or not the officer may have made an error. As noted previously, an expert would have no personal knowledge of the actual administration of the test and could not testify to those points.

[¶22] Tozier argues that his rights would be violated if the State is not required to call an expert because he cannot cross-examine the officer on the science behind the breath-alcohol testing equipment. This argument finds no support in the landmark Confrontation Clause cases cited herein.[7] Those cases deal with the offering into evidence of reports deemed to be testimonial because

---

[6] The Court in *Bullcoming* distinguished between human observations and machine-produced results for testimonial purposes: "These representations [contained in laboratory analysts' reports], relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination." 131 S. Ct. at 2714. The Court emphasized that "[the analyst] certified to more than a machine-generated number." *Id.* at 2715.

[7] Tozier's argument is analogous to the argument of the defendant in *State v. Ducasse*, relating to a manufacturer's "[c]ertificate of [c]ompliance" which attested to the scientific integrity of its blood collection tubes. 2010 ME 117, ¶ 5, 8 A.3d 1252. We rejected a Confrontation Clause challenge, concluding that the manufacturer's certificate—much like the Department certificate in the instant matter—was nontestimonial. *See id.* ¶ 13.

they include the laboratory work and conclusions of an analyst in lieu of the analyst's actual testimony. Tozier offers an argument that would significantly expand the Confrontation Clause jurisprudence by requiring the officer who conducted the Intoxilyzer test *and* an expert on the inner workings of the machine to testify. We decline to adopt such an interpretation.

The entry is:

> Order vacated. Remanded for further proceedings consistent with this opinion.

---

JABAR, J., dissenting

[¶23]  I respectfully dissent. To avoid a violation of the Confrontation Clause, 29-A M.R.S. § 2431 (2013),[8] must be construed as requiring the State to provide, upon demand, a live witness who can testify about the functioning of the Intoxilyzer. The only type of witness qualified to provide this type of testimony is an expert witness. For that reason, I would hold that the trial court's ruling excluding the Intoxilyzer results was correct.

[¶24]  Test results showing a confirmed alcohol level at the time of the alleged offense are, by statute, generally admissible to prove impairment. 29-A M.R.S. § 2431(1). "A person qualified to operate a self-contained,

---

[8]  Title 29-A M.R.S. § 2431 (2013) has since been amended, but not in any way that affects this appeal. P.L. 2013, ch. 459, § 3 (effective March 12, 2014) (codified at 29-A M.R.S. § 2431 (2014)).

breath-alcohol testing apparatus may issue a certificate stating the results of the analysis." 29-A M.R.S. § 2431(2)(B). When duly signed and sworn, that certificate is prima facie evidence that

> **(1)** The person taking the specimen was authorized to do so;
>
> **(2)** Equipment, chemicals, and other materials used in the taking of the specimen were of a quality appropriate for the purpose of producing reliable test results as determined by the Department of Health and Human Services;
>
> **(3)** Equipment, chemicals, and other materials required to be approved by the Department of Health and Human Services were in fact approved;
>
> **(4)** The sample tested was in fact the same sample taken from the defendant; and
>
> **(5)** The alcohol level or drug concentration in the blood or urine of the defendant at the time the sample was taken was as stated in the certificate.

29-A M.R.S. § 2431(2)(C). In addition, 29-A M.R.S. § 2431(2)(D) provides:

> With 10 days['] written notice to the prosecution, the defendant may request that a qualified witness testify to the matters of which the certificate constitutes prima facie evidence. The notice must specify those matters concerning which the defendant requests testimony. The certificate is not prima facie evidence of those matters.

Thus, at the defendant's request, the State must produce a witness to testify not only as to the procedures that were followed in administering the breath test, but also as to whether the concentration of alcohol in the defendant's blood was

actually the amount reported by the person administering the test. *See id.* § 2431(2)(C)(5).

[¶25]  Although subsection D refers only to a "qualified witness" and not to an "expert witness," a qualified witness's testimony, whether based on opinion or facts, must be founded on knowledge of the workings of the Intoxilyzer.  In most instances, a police officer who is certified to operate an Intoxilyzer will not have sufficient expertise or training to testify as to whether the concentration of alcohol in the defendant's blood actually corresponded to the result reported by the Intoxilyzer.  *See* 29-A M.R.S. § 2431(2)(C)(5).[9]  Thus, when the defendant requests a qualified witness, the State must produce a witness with sufficient expertise to explain how the Intoxilyzer reads breath alcohol and accurately converts that reading to a measure of alcohol in the blood.  The only type of witness qualified to testify as to these matters will, of necessity, be an expert.

[¶26]  Because of the Confrontation Clause implications, section 2431(2)(D) must be interpreted to require an expert witness.  In deciding the constitutionality of a statute, we assume that the Legislature acted with knowledge of constitutional restrictions.  *Portland Pipe Line Corp. v. Envtl. Improvement Comm'n*, 307 A.2d 1,

---

[9]  Because the issue of whether the admission of statements or certifications from the Department or the manufacturer violate the Confrontation Clause is not raised by this appeal, I do not address it.  *See* 29-A M.R.S. §§ 2431(C)(3), (H), (I).  We have previously held, however, that a certificate of compliance from the manufacturer of blood collection tubes in a blood-alcohol kit used to collect a defendant's blood sample is nontestimonial and therefore is not subject to the Confrontation Clause.  *State v. Ducasse*, 2010 ME 117, ¶¶ 3, 5, 13, 8 A.3d 1252.

16 (Me. 1973). Even if there were any doubt concerning the meaning of the statute's plain language, "[a]ll reasonable doubts must be resolved in favor of the constitutionality of the statute, and if the statute is susceptible to more than one interpretation we must adopt an interpretation, if one there be, which will render it constitutional." *Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 33, 86 A.3d 35 (quotation marks omitted).

[¶27] Although the circumstances of cases involving machine-generated data pose unique challenges, they raise many of the same concerns that lie at the heart of Confrontation Clause jurisprudence. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 315 (2009) ("It is true . . . that *ex parte* examinations of the sort used at [Sir Walter] Raleigh's trial have long been thought a paradigmatic confrontation violation . . . . But the paradigmatic case identifies the core of the right to confrontation, not its limits." (quotation marks omitted)); *State v. Crooker*, 123 Me. 310, 313, 122 A. 865 (1923) ("[M]ust it not, in the interests of justice, be the character of the evidence itself which gives the constitutional right?").

[¶28] Pursuant to the Confrontation Clause, "out-of-court testimonial statements by witnesses who are unavailable for cross-examination are inadmissible." *State v. Williams*, 2012 ME 63, ¶ 26, 52 A.3d 911. "Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006)

(quoted by *State v. Metzger*, 2010 ME 67, ¶ 14, 999 A.2d 947). "A document created solely for an evidentiary purpose . . . made in aid of a police investigation, ranks as testimonial." *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2717 (2011) (quotation marks omitted).

[¶29]  In *Melendez-Diaz*, the Supreme Court held that "certificates of analysis," which stated that a substance recovered from the defendant's possession contained cocaine, were testimonial statements subject to the Confrontation Clause. 557 U.S. at 308, 311. The Court reasoned that, because the certificates were "functionally identical to live, in-court testimony," the defendant was entitled to be confronted with the analysts who tested the substance. *Id.* at 310-11. Similarly, in *Bullcoming*, the Supreme Court held that a defendant is entitled to be confronted with the analyst who certified that the defendant's blood contained a certain level of alcohol. 131 S. Ct. at 2710. There, the Court reasoned that, despite the reliability of the certification based on machine-generated raw data, the analyst who performed the test must be made available for cross-examination. *Id.* at 2715.

[¶30]  The Intoxilyzer dispenses with the need to have an analyst conduct testing on a suspect's blood in order to determine the concentration of alcohol in the blood. It effectively replaces the types of analysts discussed in *Bullcoming* and *Melendez-Diaz*. Consequently, the results it generates have become the functional equivalent of the testimonial statements provided by analysts who examine blood

samples in laboratories. This technological development does not obviate the constitutional guarantee to be provided a meaningful opportunity to test the State's evidence by cross-examination. *See Melendez-Diaz*, 557 U.S. at 317 (citing *Crawford v. Washington*, 541 U.S. 36, 61 (2004)); *see also State v. Muldowny*, 871 So. 2d 911, 913 (Fla. Dist. Ct. App. 2004) ("[O]ne should not have privileges and freedom jeopardized by the results of a mystical machine that is immune from discovery, that inhales breath samples and that produces a report specifying a degree of intoxication."). Under these circumstances I discern no basis for distinguishing a document created by technology—here, the Intoxilyzer results—from a document created by a living person. *See Bullcoming*, 131 S. Ct. at 2716 ("[It is not] the role of courts to extrapolate from the words of the Confrontation Clause to the values behind it, and then to enforce its guarantees only to the extent they serve (in the courts' views) those underlying values." (alteration omitted) (quotation marks omitted)).

[¶31] Courts in other jurisdictions have reached the opposite conclusion, deciding that the results of a breath-alcohol test are not subject to the Confrontation Clause because they are not "statements" made by a live "witness." *See, e.g., United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008); *United States v. Washington*, 498 F.3d 225, 230 (4th Cir. 2007). Some of these courts have concluded that machines or instruments are not subject to the Confrontation Clause

because they produce results automatically by means of a scientific process, not subject to human interaction or interpretation. *See, e.g., Washington*, 498 F.3d at 231 n.3. The logic behind this conclusion, however, is the same logic that the Supreme Court has rejected as a basis for determining whether evidence is subject to the requirements of the Confrontation Clause. *See Bullcoming*, 131 S. Ct. at 2715 ("[T]he comparative reliability of an analyst's testimonial report drawn from machine-produced data does not overcome the Sixth Amendment bar."); *Crawford*, 541 U.S. at 62 ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes.") (quoted by *Melendez-Diaz*, 557 U.S. at 317-18).

[¶32] Nor am I persuaded by the suggestion that Intoxilyzer results must be characterized as beyond the reach of the Confrontation Clause simply because the instrument itself cannot be cross-examined. It is certainly true that the Intoxilyzer instrument cannot respond to questioning in court. *See, e.g., Moon*, 512 F.3d at 362 ("[H]ow could one cross-examine a gas chromatograph? Producing spectrographs, ovens, and centrifuges in court would serve no one's interests."). However, this is precisely why expert testimony about the functioning of the instrument is constitutionally required. Such testimony serves as a functional equivalent to cross-examination of the instrument itself. "The central concern of

the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61 (quoted by *Melendez-Diaz*, 557 U.S. at 317); *see also Kentucky v. Stincer*, 482 U.S. 730, 737 (1987) ("The right to cross-examination, protected by the Confrontation Clause, . . . is essentially a functional right designed to promote reliability in the truth-finding functions of a criminal trial." (quotation marks omitted)); *Crooker*, 123 Me. at 314, 122 A. 865 ("Rebuttal merely arrays testimony against testimony. Cross-examination seeks to go further and weaken or destroy the testimony on the other side.").

[¶33] Where the State seeks to convict a defendant based upon an instrument's assertion that the defendant's blood or breath contains a certain level of alcohol, the defendant must be provided a meaningful opportunity for cross-examination regarding the basis of that statement. The State cannot satisfy that requirement by producing a witness who has no knowledge or understanding of the scientific basis for the results. *See* Charles Short, Note, *Guilt by Machine: The Problem of Source Code Discovery in Florida DUI Prosecutions*,

61 Fla. L. Rev. 177, 198 (2009) ("Unlike a witness, whose reliability could be challenged by defense counsel on cross-examination, the breath test machine cannot be 'confronted' by a defendant unless the defendant understands how the machine actually works.") In a criminal prosecution, the State bears the burden of proof; it is therefore the State's responsibility to ensure that the defendant has the opportunity to test the strength of the State's evidence through meaningful cross-examination. *See Melendez-Diaz*, 557 U.S. at 324. For these reasons, I would affirm the trial court's ruling excluding the Intoxilyzer results.

---

**On the briefs:**

Todd R. Collins, District Attorney, and Kurt A. Kafferlin, Asst. Dist. Atty., 8th Prosecutorial District, Houlton, for appellant State of Maine

Christopher K. MacLean, Esq., Elliott & Maclean, LLP, Camden, for appellee Chad H. Tozier

**At oral argument:**

Kurt A. Kafferlin, Asst. Dist. Atty, for appellant State of Maine

Christopher K. MacLean, Esq., for appellee Chad H. Tozier