MAINE SUPREME JUDICIAL COURT                                         Reporter of Decisions
Decision:     2016 ME 157
Docket:       Pen-15-562
Argued:       September 8, 2016
Decided:      October 20, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN,* JABAR, HJELM, and HUMPHREY, JJ.


STATE OF MAINE

v.

RUSSELL W. CARTER


GORMAN, J.

[¶1]   Russell W. Carter appeals from a judgment of conviction for solicitation of a child to commit a prohibited act (Class D), 17-A M.R.S. § 259-A(1)(A) (2015), entered in the trial court (Penobscot County, *A. Murray, J.*) after a jury-waived trial.  Carter challenges the court's denial of his motion to dismiss the complaint based on venue, the court's failure to apply the affirmative defense of renunciation, and the sufficiency of the evidence supporting his conviction.  We affirm the judgment.

---

* Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

## I. BACKGROUND

[¶2] Viewing the evidence in the light most favorable to the State, the following facts were established at trial. *See State v. Hayden*, 2014 ME 31, ¶ 12, 86 A.3d 1221. In 2014, an elementary school in Penobscot County contacted the Bangor Police Department when the school discovered that one of its students, a thirteen-year-old girl, had been communicating with adult men on her school-issued iPad. A police sergeant took over the device and began posing as the girl ("Samantha") to continue communicating with the men and to connect with other individuals. Among the men with whom the sergeant communicated through Samantha's account was Carter, a thirty-one-year-old man living in Bowdoin. Samantha identified herself multiple times to be a thirteen-year-old girl, and the picture attached to the online account was a picture of a girl who appeared to be about thirteen years old. In their conversations, Carter indicated on numerous occasions that he would like to perform sexual acts on Samantha and have her perform sexual acts on him, including intercourse and oral sex. The two exchanged hundreds of online messages in March and April of 2014, during which Carter made arrangements to meet Samantha in person to engage in sexual activity on

April 6 and April 20, 2014. Carter did not show up at the appointed time and place on either date.

[¶3] On June 16, 2014, Carter was charged with one count of solicitation of a child to commit a prohibited act (Class D), 17-A M.R.S. § 259-A(1)(A). He pleaded not guilty to the charge.

[¶4] The court conducted a jury-waived trial on September 21, 2015. After the State rested, Carter moved to dismiss the complaint for improper venue. The court denied the motion. Carter also unsuccessfully argued to the trial court that the affirmative defense of renunciation applied. *See* 17-A M.R.S. § 154 (2015). By judgment dated October 30, 2015, the court found Carter guilty of the charge and imposed a suspended jail term of six months and one year of probation.[1] Carter appeals.

## II. DISCUSSION

[¶5] Carter argues that the court erred by failing to find him not guilty based on the affirmative defense of renunciation. We review the statutory application of an affirmative defense de novo as a matter of law. *State v. Graham*, 2015 ME 35, ¶ 15, 113 A.3d 1102. In doing so, we interpret the relevant statute according to its plain language. *See State v. Tozier*, 2015 ME

---

[1] As a result of this conviction, Carter is also required to register on the State's sex offender registry for ten years. 34-A M.R.S. §§ 11273(14), 11285(1) (2015).

57, ¶ 6, 115 A.3d 1240.  Only if that plain language is ambiguous will we go on to consider other indicia of legislative intent to discern its meaning.  *Id.* ¶ 11.

[¶6]  The affirmative defense of renunciation is set out in 17-A M.R.S. § 154:

### § 154. General provisions regarding chapter 7

**1.**  It shall not be a crime to conspire to commit, or to attempt, or solicit, any crime set forth *in this chapter*.

**2.**  There is an affirmative defense of renunciation in the following circumstances.

> **A.** In a prosecution for attempt under section 152, it is an affirmative defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

> **B.** In a prosecution for solicitation under section 153, or for conspiracy under section 151, it is an affirmative defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant prevented the commission of the crime solicited or of the crime contemplated by the conspiracy, as the case may be.

> **C.** A renunciation is not "voluntary and complete" within the meaning of this section if it is motivated in whole or in part by: A belief that a circumstance exists which increases the probability of detection or apprehension of the defendant or another participant in the criminal operation, or which makes more difficult the consummation of the crime; or a

> decision to postpone the criminal conduct until another time or to substitute another victim or another but similar objective.

(Emphasis added.) As its title states, the application of section 154 is expressly limited to provisions in chapter 7. Chapter 7 contains "OFFENSES OF GENERAL APPLICABILITY," and includes only the offenses of criminal conspiracy, 17-A M.R.S. § 151 (2015); criminal attempt, 17-A M.R.S. § 152 (2015); aggravated attempted murder, 17-A M.R.S. § 152-A (2015); and criminal solicitation, 17-A M.R.S. § 153 (2015). Even for those offenses, the affirmative defense of renunciation may be used only in three limited instances: (1) "[i]n a prosecution for attempt under section 152," 17-A M.R.S. § 154(2)(A); (2) "[i]n a prosecution for solicitation under section 153," 17-A M.R.S. § 154(2)(B); and (3) "[i]n a prosecution . . . for conspiracy under section 151," 17-A M.R.S. § 154(2)(B).

[¶7]  Carter was charged with the crime of solicitation of a child to commit a prohibited act pursuant to 17-A M.R.S. § 259-A, which is located in chapter 11, entitled "SEX ASSAULTS." By the plain terms of section 154, solicitation of a child to commit a prohibited act therefore is not one of the few crimes for which renunciation is an available defense.[2] The court committed

---

[2]  Carter suggests that because 17-A M.R.S. § 259-A (2015) was not enacted until 2011, *see* P.L. 2011, ch. 597, § 3 (effective April 6, 2012), many years after 17-A M.R.S. § 154 (2015) was

6

no error in failing to apply the affirmative defense to absolve Carter of his guilt on that charge.

[¶8] Carter also challenges the sufficiency of the evidence supporting his conviction generally. We review the evidence in the light most favorable to the State to determine if a fact-finder rationally could find, beyond a reasonable doubt, that Carter committed each element of the crime charged. *Hayden*, 2014 ME 31, ¶ 12, 86 A.3d 1221.

[¶9] The elements of solicitation of a child to commit a prohibited act are set out in 17-A M.R.S. § 259-A(1)(A):

> **1.** A person is guilty of soliciting a child to commit a prohibited act if:
>
> **A.** The actor, with the intent to engage in a prohibited act with the other person, knowingly solicits directly or indirectly that person by any means to engage in a prohibited act and the actor:

---

enacted in 1975, *see* P.L. 1975, ch. 499, § 1 (effective March 1, 1976), the Legislature's failure to include section 259-A among those crimes to which section 154 applies was a mere oversight. Because the language of section 154 is plain and unambiguous, we need not go beyond that language to consider any other indicia of legislative intent, as Carter encourages us to do. *See State v. Tozier*, 2015 ME 57, ¶ 11, 115 A.3d 1240. In any event, the Legislature easily could have amended section 154 to include the crime of solicitation of a child to commit a prohibited act when it enacted section 259-A, but did not do so. *See Joyce v. State*, 2008 ME 108, ¶ 15, 951 A.2d 69 ("The Legislature could have modified, replaced, or eliminated altogether its . . . language if it wished; instead, it left the statute unchanged.").

**(1)** Is at least 16 years of age;

**(2)** Knows or believes that the other person is less than 14 years of age; and

**(3)** Is at least 3 years older than the age expressed by the other person.

A "prohibited act" is defined as "[a] sexual act," "[s]exual contact," or "[s]exual exploitation of a minor pursuant to section 282." 17-A M.R.S. § 259-A(2). "Sexual act" is further defined as, inter alia, "[a]ny act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other." 17-A M.R.S. § 251(1)(C)(1) (2015). "Sexual contact" is further defined as "any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact." 17-A M.R.S. § 251(1)(D) (2015).

[¶10]  Here, the State provided evidence, and Carter does not dispute, that he was thirty-one years old when he was communicating with Samantha and that he believed that she was not yet fourteen years old.  Carter also does not dispute that the State proved that he knowingly solicited Samantha to engage in both sexual acts and sexual contact.  Carter argues, however, that

there was no competent evidence to prove his intent to engage in a prohibited act with Samantha because he never tried to meet Samantha in person. We disagree.

[¶11]  The State established that Carter initiated a discussion about meeting Samantha in person, set up two dates for the two of them to meet, discussed with Samantha what excuse she would give her mother to leave home, gave Samantha details about what vehicle he would be driving, and chose a location and time for her to meet him.  In fact, when Samantha suggested that "if he was uncomfortable with meeting, then we could just text, that was fine with me," Carter "said no, he -– he wanted to meet."  From this evidence, the court reasonably could infer Carter's intent to engage in one or more of the prohibited acts that he suggested he and Samantha engage in. *See State v. Woodard*, 2013 ME 36, ¶ 19, 68 A.3d 1250.  That Carter did not actually meet Samantha on either of those two occasions does not negate his state of mind at the time he committed each of the other elements of solicitation of a child to commit a prohibited act.  Entirely absent from the elements of the crime as elucidated in section 259-A is any requirement that the defendant and victim ever meet in person.  Carter's commission of the crime was complete upon his solicitation of the victim to do a prohibited act.

Any action he took to follow through on that solicitation might well have subjected Carter to additional criminal charges.[3]

The entry is:

Judgment affirmed.

---

**On the briefs:**

Hunter J. Tzovarras, Esq., Hampden, for appellant Russell W. Carter

R. Christopher Almy, District Attorney, and Tracy Collins, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

**At oral argument:**

Hunter J. Tzovarras, Esq., for appellant Russell W. Carter

Tracy Collins, Asst. Dist. Atty., for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2014-2207
FOR CLERK REFERENCE ONLY

---

[3] In addition, Carter's argument with regard to venue is unpersuasive and we do not address it further.