2006 ME 65

**STATE of Maine**

v.

**David YORK.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 22, 2006.

Decided: June 8, 2006.

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Attorney, Portland, for State.

Angus Ferguson, Esq., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] David York appeals from the judgments of conviction entered in the Superior Court (Cumberland County, *Mills, J.*) after a jury found him guilty of reckless conduct with the use of a dangerous weapon (Class C), 17-A M.R.S. § 211 (2005), and criminal threatening (Class D), 17-A M.R.S. § 209 (2005). York contends, inter alia, that there was insufficient evidence to convict him of both charges.[1] We are unpersuaded by York's contentions and affirm the judgments.

## I. BACKGROUND

[¶ 2] When viewed in the light most favorable to the State, *see State v. Bouchard*, 2005 ME 106, ¶ 10, 881 A.2d 1130, 1134, the evidence presented at trial revealed the following facts. On July 23, 2003, the victim, a fifty-three-year-old man with an amputated right leg, was driving his van, which is customized with a left foot accelerator to accommodate his handicap, with his wife, en route from their Bowdoinham home to visit a bank in Brunswick. The victim was coming off a ramp and stopped, waiting to enter into heavy southbound traffic on Route 1.

[¶ 3] York was driving a van behind the victim's vehicle. York honked his horn at the victim more than once. York's van remained very close behind the victim's vehicle, and it appeared to the victim that York was about to force him into traffic. After the victim slowly entered into the traffic on Route 1, York drove his van in the breakdown lane alongside the passen-

---

1. We have examined York's additional argument that the attorney for the State committed prosecutorial misconduct during closing argument, and find it to be without merit.

ger side of the victim's vehicle. The victim decelerated and moved his vehicle to the left to allow York to pass him. Although given the opportunity to pass the victim's vehicle, York did not do so. When York's driver's side door was near the victim's front end, York looked at the victim, then made contact with the victim's vehicle by driving his van into it. After this collision, York continued to edge his van toward the victim's vehicle, forcing the victim into the oncoming northbound traffic.

[¶ 4] York then sped up and pulled over into an area on the opposite side of the road, which was about two hundred yards away from the point of initial contact. The victim was already at the edge of this area, forced there by York, so he also pulled over. After both vehicles stopped, York quickly exited his van, and immediately approached the victim's vehicle. When the victim rolled down his window to speak with York, York yelled and screamed at him, used profanity, and appeared very angry. York stated to the victim, "I ought to pull you out of there and kick your ass." The victim was not wearing his prosthetic leg, and feared he would be hurt if York pulled him from the van. Because of his fear, he told York that he was going to call the police. York told the victim to call the police because they did not scare him. When the victim called the police, and gave them York's license plate number, however, York got into his van and drove off.

[¶ 5] When the police arrived sometime later, the victim was still shaking from fear, and needed time to catch his breath while speaking with the police officer. The officer asked the victim to come to the police station. The victim agreed, but told the officer that he first needed to go into Brunswick to complete some personal business at a bank. The victim noticed the damage to his right front fender, bumper, and light assembly while at the bank. The victim then went to the police station, was showed a photo array, and identified York as the perpetrator.

[¶ 6] After a jury trial, at which York was convicted, York was sentenced to four years imprisonment for reckless conduct with the use of a dangerous weapon, with all but fifteen months suspended, to be followed by four years of probation, and to a concurrent sentence of ten months for criminal threatening. This appeal followed.

## II. DISCUSSION

[¶ 7] When reviewing a challenge to the sufficiency of the evidence in a criminal case, "we view the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *Bouchard*, 2005 ME 106, ¶ 10, 881 A.2d at 1134 (quotation marks omitted). Moreover, "the fact-finder may draw all reasonable inferences from the evidence." *Id.* (quotation marks omitted).

A. Reckless Conduct with the Use of a Dangerous Weapon

[¶ 8] York contends that there was insufficient evidence to convict him of reckless conduct with the use of a dangerous weapon. Reckless conduct occurs when a person "recklessly [2] creates a sub-

---

2. Title 17–A M.R.S. § 35(3) (2005) provides, in pertinent part:

    A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.

    . . . .

    C. For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

stantial risk of serious bodily injury to another person." 17–A M.R.S. § 211(1). "Use of a dangerous weapon" is defined as "the use of a firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which, in the manner it is used or threatened to be used is capable of producing death or serious bodily injury." 17–A M.R.S. § 2(9)(A) (2005). A motor vehicle can be used as a dangerous weapon. *State v. Seymour*, 461 A.2d 1060, 1061 (Me.1983) ("It is well established that an automobile may be used as a dangerous weapon within the meaning of 17–A M.R.S.A. § 2(9)(A).") (citing *State v. Jones*, 405 A.2d 149, 151 (Me.1979)).

[¶ 9] The evidence here is sufficient to prove reckless conduct with the use of a dangerous weapon. York drove his van alongside the victim's vehicle, remaining there even though he had more than ample opportunity to pass the victim's vehicle without contact. Instead, York used his van to push the victim's vehicle *into* heavy oncoming traffic, and made contact with that vehicle at least once.[3] That evidence supports the finding that York recklessly used his vehicle as a dangerous weapon. *See Bouchard*, 2005 ME 106, ¶ 10, 881 A.2d at 1134.

### B.  Criminal Threatening

[¶ 10] York also contends that there was insufficient evidence to convict him of criminal threatening. York argues that if he used the phrase "kick your ass," it cannot be taken literally to mean that he intended to kick the victim in the buttocks. Therefore, York asserts that reasonable doubt exists as to whether he intended to place the victim in fear of imminent bodily injury or merely "punish or defeat" him, "have boisterous fun" with him, or "defuse frustration and hostility with humor or sarcasm."

[¶ 11] A person commits the crime of criminal threatening when he "intentionally or knowingly places another person in fear of imminent bodily injury." 17–A M.R.S. § 209(1). We have construed section 209 as not requiring that a victim's fear be objectively reasonable. Evidence of a victim's subjective fear will support a conviction for criminal threatening. *State v. Thibodeau*, 686 A.2d 1063, 1064 (Me. 1996) ("[W]e address for the first time the question whether section 209 requires by necessary implication that a victim's fear be objectively reasonable. We conclude that it does not.").

[¶ 12] In contending that the evidence is insufficient, York focuses solely on the words he used, totally divorced from his accompanying actions, the context in which his words were spoken, his tone, and the victim's subjective fear of imminent bodily injury, particularly when York had just used his van to hit the victim's vehicle. The police officer noted that the victim was "shaking very badly." Another witness observed York's conduct, felt "great concern," and decided that he needed to "stay clear" of York. That witness reported York's conduct to the police. This evidence supports the jury's finding, beyond a reasonable doubt, that York was guilty of every element of criminal threatening. *See Bouchard*, 2005 ME 106, ¶ 10, 881 A.2d at 1134.

The entry is:

Judgments affirmed.

---

3. This case illustrates the unfortunate consequences that can result from "road rage." *See, e.g., Road Rage: Causes & Dangers of Aggressive Driving: Hearing Before the Sub-* comm. *on Surface Transp. of the Comm. on Transp. and Infrastructure*, House of Rep., 105th Cong. 38 (1997).