MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2021 ME 41
Docket:       Ken-20-242
Argued:       April 8, 2021
Decided:      July 27, 2021

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

MARK GESSNER

CONNORS, J.

[¶1]  Shortly after allegedly leaving the custody of Riverview Psychiatric Center in Augusta, without permission, Mark Gessner was arrested for criminal threatening with a dangerous weapon at his father's home in Bath.  A jury acquitted Gessner of the criminal threatening charge in Sagadahoc County, and the State subsequently charged Gessner with escape in Kennebec County.  After the trial court (Kennebec County, *Murphy, J.*) denied Gessner's motion to dismiss the successive prosecution, Gessner entered a conditional guilty plea. On appeal, Gessner argues that, by separately trying him for criminal

2

threatening in Sagadahoc County and then for escape in Kennebec County, the State violated 17-A M.R.S. § 14 (2021).[1] We agree and vacate the judgment.

## I. BACKGROUND

[¶2] The following procedural facts are drawn from the record.

[¶3] On January 17, 2020, the State filed a complaint in the trial court (Kennebec County) charging Gessner with escape (Class B), 17-A M.R.S. § 755(1)(B) (2021). Gessner was indicted a month later. The indictment alleged that Gessner had been in the official custody of the Department of Health and Human Services on October 21, 2018, pursuant to a commitment order and that, without official permission, he left that custody or failed to return to custody after being granted temporary leave. The indictment further alleged that Gessner had "used physical force against another person, threatened to use physical force, or was armed with a dangerous weapon" at the time of the offense.

[¶4] On June 11, 2020, Gessner filed a motion to dismiss the indictment, arguing that 17-A M.R.S. § 14 barred the State from prosecuting him for escape in Kennebec County because (1) he had already been prosecuted for—and

---

[1] Gessner also argues that the multiplicity of prosecutions here raises public policy concerns. We decline to address his argument.

acquitted of—criminal threatening with a dangerous weapon in Sagadahoc County, (2) the alleged crimes arose from the same criminal episode, (3) prosecutors in both counties had knowledge of the alleged criminal conduct shortly after it allegedly occurred, and (4) the Sagadahoc County District Attorney's Office could have prosecuted Gessner for escape in accordance with the venue provision in the escape statute. Gessner's motion further argued that the indictment should be dismissed for "malicious prosecution" because the court could reasonably infer that "the only reason" that Kennebec County initiated the prosecution was because Sagadahoc County "lost at trial."

[¶5] The State filed a response arguing that Kennebec County had exclusive authority to prosecute Gessner for escape and that the alleged crimes did not arise from the same criminal conduct or same criminal episode. The State also denied Gessner's claim of misconduct.

[¶6] On June 24, 2020, the trial court held a nontestimonial hearing in which the facts—although minimally developed—were not disputed. The undisputed facts are the following: Gessner, who was confined to the Riverview Psychiatric Center in Augusta pursuant to a court order, was granted temporary leave in the form of a "two-hour unsupervised community pass" to ride his bike "in the Augusta/Hallowell area" beginning at 10:04 a.m. on

October 21, 2018. Gessner traveled to his father's home in Bath, without official permission, where he engaged in an altercation with his brother. Gessner was arrested in Bath at 11:45 a.m. The State, through the Sagadahoc County District Attorney's Office, charged Gessner with two counts of criminal threatening with a dangerous weapon (Class C) in violation of 17-A M.R.S. §§ 209(1), 1252(4) (2018).[2] An investigating officer of the Bath Police Department submitted a report to the Sagadahoc County District Attorney's Office in which the officer described a conversation that he had had with a representative from Riverview about the terms of Gessner's temporary leave and the circumstances of his arrest. By a letter dated October 23, 2018, Riverview notified the Sagadahoc County and Kennebec County District Attorneys' Offices that Gessner had violated the terms of his temporary leave. Prior to trial in Sagadahoc County, the State dismissed one of the counts of criminal threatening. On September 27, 2019, a jury returned a verdict of not guilty on the other count. On January 17, 2020, the State, through the Kennebec County District Attorney's Office, charged Gessner with escape (Class B) in violation of 17-A M.R.S. § 755(1)(B).

---

[2] As part of a recodification of Maine's sentencing statutes, 17-A M.R.S. § 1252(4) (2018) was repealed and replaced by 17-A M.R.S. § 1604(5)(A) (2021). P.L. 2019, ch. 113, §§ A-1, A-2 (emergency, effective May 16, 2019).

[¶7]  At the conclusion of the hearing, the court found that the escape and criminal threatening allegations were part of "one course of conduct" because the alleged crimes occurred across county lines within "a span of a few hours" and because escape is a "continuing" offense.  The court further found that the State had not engaged in prosecutorial misconduct.  The court took the matter under advisement to consider whether venue would have been proper in Sagadahoc County on a charge of escape from custody in Kennebec County.  On June 30, 2020, the court issued a written decision denying Gessner's motion.  The court concluded that, pursuant to 17-A M.R.S. § 755(3-A) (2021) and *State v. Chasse*, 2002 ME 90, 797 A.2d 1262, the State properly commenced the prosecution for escape in Kennebec County.

[¶8]  On August 12, 2020, the State filed a motion to amend the indictment by striking the language alleging that Gessner "used physical force against another person, threatened to use physical force, or was armed with a dangerous weapon," making the amended charge a Class C offense under 17-A M.R.S. § 755(1)(A) (2021).  On August 21, 2020, Gessner entered a conditional guilty plea to the amended charge. *See* M.R.U. Crim. P. 11(a)(2).  He timely appeals. *See* 15 M.R.S. § 2115 (2021); M.R. App. P. 2B(b).

## II. DISCUSSION

A.      Standards of Review

[¶9]  We review a trial court's application of a statutory defense de novo. *See State v. Carter*, 2016 ME 157, ¶ 5, 150 A.3d 327; *State v. Graham*, 2015 ME 35, ¶ 15, 113 A.3d 1102; *State v. Cannell*, 2007 ME 30, ¶ 6, 916 A.2d 231.  In doing so, we interpret the relevant statutes de novo.  *State v. Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011.  When interpreting a statute, "[w]e look first to the plain language of the statute to determine its meaning if we can do so while avoiding absurd, illogical, or inconsistent results." *Id.*  "Only if the meaning of a statute is not clear will we look beyond the words of the statute to examine other potential indicia of the Legislature's intent, such as the legislative history." *Id.*  "Nothing in a statute may be treated as surplusage if a reasonable construction applying meaning and force is otherwise possible." *State v. Tozier*, 2015 ME 57, ¶ 6, 115 A.3d 1240 (quotation marks omitted).

[¶10]  That said, we review a trial court's factual determinations for clear error, *see State v. Treadway*, 2020 ME 127, ¶¶ 13-16, 240 A.3d 66, even when the court's fact-finding is based entirely upon documentary evidence and stipulated facts, *Herzog v. Irace*, 594 A.2d 1106, 1108 (Me. 1991).

B.      The Separate Trials Statute

[¶11]  The separate trials statute, 17-A M.R.S. § 14, provides:

A defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses were known to the appropriate prosecuting officer at the time of the commencement of the first trial and were within the jurisdiction of the same court and within the same venue, unless the court, on application of the prosecuting attorney or of the defendant or on its own motion, orders any such charge to be tried separately if it is satisfied that justice so requires.

In other words, section 14 generally limits the multiplicity of prosecutions for all criminal offenses arising from the same set of circumstances.  *See* L.D. 314, § 1, at 13-14 (107th Legis. 1975); *see also State v. Soule*, 2002 ME 51, ¶ 9, 794 A.2d 58 (describing section 14 as a compulsory joinder statute).  The penalty for failure to join in one trial all such offenses is a bar to further prosecution.  Model Penal Code & Commentaries § 1.07 cmt. 3 at 116 (Am. L. Inst. 1985).

[¶12]  The prohibition against separate trials for multiple offenses based on the same conduct or arising from the same criminal episode is subject to two conditions.  First, the "appropriate prosecuting officer" must have known, when the first trial began, of the criminal offenses that are later alleged in the second prosecution.  17-A M.R.S. § 14.  The purpose of this condition is to prevent a defendant from taking advantage of the fact that he has successfully concealed

8

his criminal activity from enforcement officials. Model Penal Code & Commentaries § 1.07 cmt. 3 at 123. Second, the trial court that presided over the first prosecution must have been a court of proper jurisdiction and venue of the offenses alleged in the second prosecution. 17-A M.R.S. § 14.

[¶13] Gessner argues that the trial court erred by concluding that his section 14 defense fails on the jurisdiction and venue requirements of the statute. Aside from arguing that the trial court properly concluded that venue was improper in Sagadahoc County for the escape charge, the State also argues that we could affirm the judgment on the alternative ground that the trial court erred when it found that the crimes with which Gessner was charged in Sagadahoc County and Kennebec County arose from the same criminal episode. *See* 15 M.R.S. § 2115-A(3) (2021); M.R. App. P. 2C(a)(1). We address each argument in turn.[3]

1.    Jurisdiction and Venue

[¶14] For section 14 to bar successive prosecution, the alleged offenses must have been committed "within the jurisdiction of the same court and within the same venue."

---

[3] At the hearing, the State conceded that the "appropriate prosecuting officer" had the requisite knowledge, and neither party challenges on appeal whether that condition of 17-A M.R.S. § 14 (2021) was satisfied.

[¶15]   "[J]urisdiction of the same court" refers to the jurisdiction conferred on the Superior Court and the District Court.  *See* 4 M.R.S. § 165 (2021); 15 M.R.S. § 1 (2021); *see also State v. Pease*, 452 A.2d 653, 654 (Me. 1982) (stating that a statute did not authorize removal from the District Court to the Superior Court but related only to "venue within the same court").  Since the creation of the Unified Criminal Docket, the distinction between the two courts has become largely unimportant in most criminal matters.  *See* M.R.U. Crim. P. 57 Advisory Note - June 2016 (stating that the definition of "Unified Criminal Docket" makes clear that the "unification of the two trial courts' criminal dockets further signals that the former distinctions between the functions of the Superior and District Courts in their handling of criminal matters have largely been eliminated"); *Ayotte v. State*, 2015 ME 158, ¶ 22 n.1, 129 A.3d 285 ("Pursuant to the Maine Rules of Unified Criminal Procedure, the State of Maine prosecutes crimes within the single statewide Unified Criminal Docket.  Prior to the recent unification process, crimes were either prosecuted in the Superior Court or District Court, each of which is also a single, statewide court." (citation omitted)).  Here, the distinction is inconsequential.  Even under the former system of separate and distinct dockets in the Superior and District Courts, the jurisdictional requirement of section 14 would have been satisfied

because the crimes with which Gessner was charged were Class B and Class C offenses, giving the Superior Court jurisdiction in both matters. *See* 15 M.R.S. § 1(1) (giving the Superior Court jurisdiction over all crimes); 4 M.R.S. § 165(1) (giving the District Court jurisdiction over only crimes for which the maximum term of imprisonment is less than one year); *see also State v. Rytky*, 476 A.2d 1152, 1153-54 (Me. 1984) (holding that prosecution of a major offense in the Superior Court was not barred by the earlier prosecution of related minor offenses in the District Court because the District Court did not have jurisdiction over the major offense).

[¶16] Section 14 also requires that the alleged offenses occurred "within the same venue." Generally, venue of a criminal offense is governed by M.R.U. Crim. P. 21(a), which provides that "[t]he trial shall be in the county in which the crime was allegedly committed." The escape statute, 17-A M.R.S. § 755 (2021), is unusual among criminal statutes, however, in that it contains its own venue provisions. Section 755(3-A) reads in relevant part:

> **3-A.** The following provisions govern prosecution for escape.
>
> **A.** Prosecution for escape or attempted escape from any institution included in subsection 3 must be in the county in which the institution is located.
>
> . . . .

> **C.** Prosecution for an escape or attempted escape for failure to return to official custody following temporary leave granted for a specific purpose or a limited period must be in the county in which the institution from which the leave was granted is located or in any county to which leave was granted.
>
> . . . .
>
> Notwithstanding other provisions of this section, in all cases of escape, prosecution may be in the county or division in which the person who has escaped was apprehended.

[¶17]  Relying on our decision in *Chasse*, 2002 ME 90, ¶ 8, 797 A.2d 1262, and the language in section 755(3-A)(A) and (C), the State contends that the charge of escape could have been initiated only in Kennebec County, where Riverview is located.  The State reads *Chasse* too broadly and the statute too narrowly.

[¶18]  In *Chasse*, the defendant escaped from custody while being transported from the Piscataquis County Jail to the Superior Court for trial. 2002 ME 90, ¶ 2, 797 A.2d 1262.  He was apprehended later that same day in Piscataquis County, and a Piscataquis County grand jury indicted the defendant for escape and other crimes.  *Id.* ¶¶ 2-3.  After multiple transfers of venue pursuant to M.R. Crim. P. 21, the trial was held in Somerset County.  *Id.* ¶¶ 4-5, 7. On appeal, the defendant argued that the escape statute, by its own terms and notwithstanding M.R. Crim. P. 21, required that his trial be held in Piscataquis

County. *Id.* ¶¶ 6, 8. The issue before us then was whether transferring the trial to another county pursuant to a procedural rule violated the venue provisions of the escape statute. *Id.* ¶¶ 6-8. Given the procedural posture of the case, we stated that the escape statute required only that the prosecution commence in the county where the institution from which the escape was made is located but that, once the prosecution had commenced in that county, the place of trial could be transferred to another county. *Id.* ¶ 8. We noted that "[t]he venue provision of the escape statute was satisfied when the indictment and arraignment occurred in the county in which the escape took place *and where [the defendant] was apprehended*." *Id.* ¶ 8 (emphasis added). In contrast, the issue presented here is whether the county in which Gessner was apprehended, which was a different county than the one where the institution was located, was a proper venue pursuant to the escape statute. We conclude that it was.

[¶19]   Turning to the escape statute, the final provision of section 755(3-A) states that "notwithstanding" the specific venue provisions that account for the myriad ways in which a person may escape official custody, "in all cases of escape, prosecution may be in the county or division in which the person who has escaped was apprehended." By the plain and unambiguous terms of the statute, Sagadahoc County was a proper venue to prosecute

Gessner for escape because it was the county in which he was apprehended. To require the prosecution for escape to commence in Kennebec County would render the final provision of the statute meaningless.[4] The trial court erred when it concluded that the prosecution for escape had to commence in Kennebec County.

### 2. Same Conduct or Same Criminal Episode

[¶20] Upon the satisfaction of the knowledge, jurisdiction, and venue requirements, section 14 will preclude "separate trials for multiple offenses based on the same conduct or arising from the same criminal episode." As noted above, we review the trial court's determination that offenses are based on the same conduct or arise from the same criminal episode for clear error. *See Treadway*, 2020 ME 127, ¶¶ 13-16, 240 A.3d 66.

[¶21] The trial court's finding that Gessner's alleged escape from Riverview and his alleged threat against a family member arose from the same

---

[4] Although we need look no further than the plain language of the statute, the legislative history of 17-A M.R.S. § 755(3-A) (2021) further supports our interpretation. The Legislature broadened section 755(3-A) to allow the State to prosecute an escapee in the county in which the escapee is apprehended, P.L. 1979, ch. 701, § 26 (effective July 3, 1980), "to take account of those instances where there are important witnesses in the locality the escapee was found," Criminal Law Advisory Commission, Draft Amendments for the 109th Legislature, 2d Reg. Sess. 96 (Nov. 1979).

14

criminal episode is supported by the record.[5]  Offenses "arising from the same criminal episode"[6] are offenses related in time, place, and circumstances.[7]  The record shows that Gessner's two-hour community pass began at 10:04 a.m. and that he was arrested at 11:45 a.m.  Thus, not only was Gessner still within the time limit permitted by the pass, but he did not violate the terms of the pass— and allegedly commit escape—until he traveled outside the permitted area.

[¶22]  Furthermore, the court's consideration of the continuing nature of escape in support of its finding that the alleged offenses were based on the same criminal episode was proper.  In *United States v. Bailey*, 444 U.S. 394, 413 (1980), the United States Supreme Court concluded that escape from custody pursuant to federal law is "a continuing offense" in that "an escapee can be held liable for failure to return to custody as well as for his initial departure."  The

---

[5] Although the trial court stated that it found that the alleged offenses were part of a "continuing course of conduct," it is clear from the record that the trial court analyzed the facts pursuant to the "same criminal episode" standard.

[6] The Model Penal Code & Commentaries § 1.07 cmt. 3 at 118-19 (Am. L. Inst. 1985) states that "offenses . . . arising from the same criminal episode" include "offenses that occur on substantially the same occasion or are motivated by a common purpose or plan and are necessary or incidental to the accomplishment of that purpose or plan."

[7] Although the State argues that the allegations of escape and criminal threatening in this case were unrelated, the State apparently believed that there was some relation when it sought an indictment against Gessner because the indictment alleged that, at the time that he left official custody or failed to return to custody, Gessner "used physical force against another person, threatened to use physical force, or was armed with a dangerous weapon"—an element that could have been proved only by offering evidence of the events that occurred in Sagadahoc County.

Court added that, "[g]iven the continuing threat to society posed by an escaped prisoner, 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" *Id.* (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)). Many state courts have similarly interpreted their analogous state statutes. *See, e.g.*, *State v. Francois*, 577 N.W.2d 417, 421 (Iowa 1998) ("[T]here is a continued danger to society when a person, whom the court has determined should be in custody, remains at large. Moreover, when such a person continues to elude arrest, the threat to the authority of the courts and the correctional system continues. . . . [A]n escapee, and likewise a person absent from custody, has a continuing duty to return to custody."); *State v. Burns*, 564 A.2d 593, 594-96 (Vt. 1989); *Campbell v. Griffin*, 710 P.2d 70, 71-73 (Nev. 1985). We conclude that escape as defined by 17-A M.R.S. § 755(1)(A)—providing that "[a] person is guilty of escape if without official permission the person intentionally . . . [l]eaves official custody or intentionally fails to return to official custody following temporary leave granted for a specific purpose or a limited period"—is a continuing offense.

[¶23] There may be circumstances in which an escape and the commission of a crime thereafter are too attenuated to constitute the same criminal episode for purposes of section 14—when, for example, the

commission of a crime occurs years after the initial escape. But under the circumstances here, there was no error. Although Gessner allegedly committed the crime of escape when he crossed the imaginary line marking the boundary of his confinement, his escape was still ongoing when he was apprehended just a short time later in an adjoining county.

The entry is:

> Judgment vacated. Remanded to the trial court
> for entry of dismissal of the indictment.

---

Clifford B. Strike, Esq. (orally), Strike & Associates, Portland, for appellant Mark Gessner

Maeghan Maloney, District Attorney, and Michael H. Madigan, Asst. Dist. Atty. (orally), Prosecutorial District Four, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2020-83
FOR CLERK REFERENCE ONLY