MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 18
Docket:        Cum-24-574
Argued:        September 9, 2025
Decided:       February 26, 2026

Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

THOMAS G. COFFILL III

LIPEZ, J.

[¶1]  Thomas G. Coffill III appeals from a judgment of conviction of eluding an officer and reckless conduct with a dangerous weapon entered by the trial court (Cumberland County, *Cashman, J.*) after a jury trial.  Coffill asserts that the Cumberland County grand jury that indicted him for these charges lacked the authority to do so because the conduct at issue occurred either entirely or partly within Sagadahoc County.  He also argues that the evidence was insufficient to support the conviction for reckless conduct with a dangerous weapon.  We disagree with both of Coffill's contentions and affirm the judgment.

## I. BACKGROUND

### A.    Facts

[¶2]  "Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt." *State v. Hurd*, 2010 ME 118, ¶ 4, 8 A.3d 651.

[¶3]  On the morning of December 4, 2023, Coffill had a dispute with his girlfriend at their home in Brunswick, which is in Cumberland County.  A few hours later, he left the home in his girlfriend's car, which he did not have permission to use.  The police were called, and an officer located Coffill turning onto New Meadows Road in West Bath, which is in Sagadahoc County.  The officer began to pursue Coffill with lights and siren activated.  Coffill did not stop.  As the officer pursued him, Coffill drove erratically and well over the speed limit, causing other drivers to slow down and swerve out of the way.[1]

[¶4]  At the on-ramp from New Meadows Road to Route 1, Coffill started to turn left.  When the officer followed, Coffill extended his turn to make a U-turn and drove directly at the officer's cruiser.  The officer had to brake quickly to avoid a head-on collision.  Coffill then reversed and drove up the on-ramp onto Route 1.

---

[1]  The officer's pursuit of Coffill was captured on video and played for the jury at trial.

[¶5]  Shortly after Coffill merged onto Route 1, he crossed back into Cumberland County.  The police pursuit continued, with Coffill driving approximately eighty miles per hour in a sixty-mile-per-hour zone in heavy traffic and swerving between lanes and around vehicles. He then exited Route 1 and continued onto Route 196, crossing back into Sagadahoc County as he entered Topsham.  He persisted in driving erratically through heavy traffic.  By this point, additional police cruisers from multiple agencies had joined the chase.

[¶6]  Coffill followed Route 196 through Topsham, eventually driving onto Interstate 295 southbound.  He then used a crossover just south of the on-ramp to reverse direction and drive north on Interstate 295.  As he entered the northbound lane of the highway, an oncoming car was forced to swerve to avoid a collision.  Coffill then exited Interstate 295 and drove back onto Route 196.  He ran a red light and nearly collided with a sheriff's deputy who was attempting to intercept him.

[¶7]  The chase finally ended when Coffill entered a gas station parking lot, where he proceeded to drive around the building several times.  Multiple police vehicles arrived at the scene.  As Coffill circled the building, he collided head-on with a police cruiser at a speed of approximately fifteen miles per hour.

The officer sustained whiplash and was later diagnosed with a mild concussion. Another officer drove up behind Coffill's vehicle and boxed him in. The police forcibly removed Coffill from his vehicle and arrested him.

## B.    Procedure

[¶8]  Coffill was charged by criminal complaint on December 6, 2023, and indicted by a Cumberland County grand jury on January 8, 2024.  He was charged with nine crimes, including, as relevant here, eluding an officer (Class C), 29-A M.R.S. § 2414(3) (2025) (Count 4), and reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211(1), 1604(5)(A) (2025) (Count 5).[2]  The indictment alleged that all nine of the crimes occurred in Brunswick, Cumberland County.

[¶9]  The State subsequently discovered that some or all of the alleged conduct that formed the basis of Counts 3, 4, 5, 6, 8, and 9 of the indictment occurred in Sagadahoc County, and it moved to amend the indictment to allege that Count 3 (aggravated criminal mischief) occurred in Topsham, Sagadahoc County, and that Counts 4, 5, 6, 8, and 9 (eluding an officer, reckless conduct

---

[2]  He was also charged with domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1) (2025) (Count 1); obstructing report of a crime (Class D), 17-A M.R.S. § 758(1)(A) (2025) (Count 2); aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A) (2025) (Count 3); driving to endanger (Class E), 29-A M.R.S. § 2413(1) (2025) (Count 6); theft by unauthorized use of property (Class D), 17-A M.R.S. § 360(1)(A) (2025) (Count 7); violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2025) (Count 8); and refusing to submit to arrest (Class D), 17-A M.R.S. § 751-B(1)(B) (2025) (Count 9).

with a dangerous weapon, driving to endanger, violation of condition of release, and refusing to submit to arrest) occurred in Brunswick, Cumberland County, "and/or" Topsham, Sagadahoc County. The court granted the motion over Coffill's objection.[3]

[¶10] The court held a two-day jury trial on September 10 and 11, 2024. After the State rested, Coffill moved for a judgment of acquittal on several counts, including reckless conduct with a dangerous weapon. The court denied the motion, and the jury found Coffill guilty of the two counts that form the basis for this appeal—eluding an officer (Count 4) and reckless conduct with a dangerous weapon (Count 5).[4] This timely appeal followed the court's entry of judgment.

## II. DISCUSSION

### A. Grand Jury Territorial Authority

[¶11] Coffill argues that the Cumberland County grand jury did not have the authority to indict him for eluding an officer or reckless conduct with a

---

[3] On appeal, Coffill does not challenge the trial court's authority to grant the State's motion to amend the indictment to add a reference to the crimes having been committed in Cumberland "and/or" Sagadahoc County. *See* M.R.U. Crim. P. 7(e). Instead, he argues that the amendment could not cure what he contends was a lack of territorial authority of the Cumberland County grand jury.

[4] The jury also returned guilty verdicts on Counts 2, 6, 7, and 9 (obstructing report of a crime, driving to endanger, theft by unauthorized use of property, and refusing to submit to arrest), and verdicts of not guilty on Counts 1 and 3 (domestic violence assault and aggravated criminal mischief). Count 8 (violation of condition of release) was tried to the court, which found Coffill guilty.

6

dangerous weapon because some or all of the conduct that formed the basis for the two charges occurred in Sagadahoc County. He further contends that in the absence of a proper indictment, the trial court lacked jurisdiction and therefore the convictions must be vacated and the charges dismissed.

[¶12] This case requires us to interpret the statute that governs a grand jury's territorial authority. Our review is therefore de novo. *See, e.g.*, *State v. Gessner*, 2021 ME 41, ¶ 9, 255 A.3d 1041. When interpreting a statute, "we look first to the plain language of the statute to determine its meaning if we can do so while avoiding absurd, illogical, or inconsistent results." *Id.* (alteration and quotation marks omitted). "Only if the meaning of a statute is not clear will we look beyond the words of the statute to examine other potential indicia of the Legislature's intent, such as the legislative history." *Id.* (quotation marks omitted).

[¶13] We begin our analysis with the Maine Constitution, which provides:

> No person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury, except in cases of impeachment, or in such cases of offenses, as are usually cognizable by a justice of the peace, or in cases arising in the army or navy, or in the militia when in actual service in time of war or public danger.

Me. Const. art. I, § 7. We have defined "infamous crime[s]" as those punishable by a period of confinement of one year or more. *Opinion of the Justices*, 338 A.2d 802, 808 (Me. 1975). Because the two charges at issue here—eluding an officer and reckless conduct with a dangerous weapon—are Class C crimes punishable by one year or more in prison, *see* 29-A M.R.S. § 2414(3); 17-A M.R.S. §§ 211, 1604(1)(C), (5)(A), the prosecution of these offenses could not lawfully proceed absent a properly returned indictment or a waiver of indictment. *See* 17-A M.R.S. § 9(1) (2025) ("All proceedings for Class A, B and C crimes must be prosecuted by indictment, unless indictment is waived . . . .").

[¶14] In this case, the validity of the indictment turns on whether the Cumberland County grand jury had authority to return an indictment on the disputed charges even though at least some of Coffill's alleged conduct occurred in Sagadahoc County. In the absence of that authority, the trial court had no jurisdiction. *See State v. True*, 330 A.2d 787, 790 (Me. 1975) ("An indictment returned by a grand jury which has acted without authority gives the court no jurisdiction . . . ."); *State v. Doherty*, 60 Me. 504, 507-08 (1872) (concluding that the trial court lacked jurisdiction where the grand jury acted without statutory authority; the indictment was therefore "*coram non judice*, and void").[5]

---

[5] The question of whether a trial court has jurisdiction over a charged crime is distinct from the question of whether the court has subject-matter jurisdiction over criminal proceedings in general.

8

[¶15] The statute governing the territorial authority of grand juries

provides:

> Grand jury territorial authority to indict for crimes coming within the jurisdiction of the Superior Court[6] must be exercised by the grand jury serving the county where the crime was committed.

15 M.R.S. § 1255-A(1) (2025). An exception exists when the "Chief Justice of

the Supreme Judicial Court creates judicial regions for venue purposes," in

which case "each grand jury in a multicounty judicial region may share

authority to indict for crimes committed in that judicial region." *Id.*

§ 1255-A(2)(A). In other words, a grand jury's territorial authority is generally

---

It is undisputed that the trial court in this case had jurisdiction over criminal proceedings filed pursuant to Maine law. *See* 4 M.R.S. § 165(1) (2025) (setting out the jurisdiction of Maine's District Court); 15 M.R.S. § 1(1) (2025) (setting out the jurisdiction of Maine's Superior Court); *infra* n.6 (explaining that the distinction between the District and Superior Courts is largely unimportant for criminal matters because the State of Maine prosecutes all crimes within the single statewide Unified Criminal Docket). The Maine Constitution, however, makes a valid indictment a prerequisite to a trial court's exercise of jurisdiction over a charged "capital or infamous crime." *See* Me. Const. art. I, § 7. In addition to requiring that "[n]o person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury," the Maine Constitution empowers the Legislature to "provide by law a suitable and impartial mode of selecting juries" for purposes of both indictment and trial. *Id.* Therefore, for the trial court to have had jurisdiction in this case, Coffill must first have been charged by an indictment that complied with the statutory requirements. In the absence of a valid indictment in any given case where one is required, the trial court lacks jurisdiction over that case and defendant, regardless of its underlying jurisdiction over criminal proceedings generally. *See Doherty*, 60 Me. at 507-08.

6 Although the statute refers to the Superior Court, "[s]ince the creation of the Unified Criminal Docket, the distinction between [the District and Superior Courts] has become largely unimportant in most criminal matters." *Gessner*, 2021 ME 41, ¶ 15, 255 A.3d 1041; *see also Ayotte v. State*, 2015 ME 158, ¶ 22 n.1, 129 A.3d 285 ("Pursuant to the Maine Rules of Unified Criminal Procedure, the State of Maine prosecutes crimes within the single statewide Unified Criminal Docket."); M.R.U. Crim. P. 57(i) ("'Unified Criminal Docket' means the single criminal docket for each county resulting from the consolidation of what formerly were the two separate and distinct criminal dockets for the Superior and District Courts.").

limited to indicting for crimes that are "committed" in the multicounty judicial region in which the grand jury sits. *Id.* § 1255-A(1)-(2)(A).[7]  Notably, although Cumberland and Sagadahoc Counties are contiguous, they are not part of the same multicounty judicial region.[8]  Coffill accordingly argues that the Cumberland County grand jury had no legal authority to indict him for *conduct* that occurred in Sagadahoc County.

[¶16]  Coffill's argument, however, misstates the limits on a grand jury's authority.  Pursuant to section 1255-A, a grand jury may indict for "crimes *committed*" within the judicial region it serves. 15 M.R.S. § 1255-A(2)(A) (emphasis added).  We accordingly focus not on Coffill's conduct generally but

---

[7] Title 15 M.R.S. § 1255-A(2)(B) also provides for a grand jury's exercise of territorial authority "as otherwise provided by law," and there are several statutory exceptions to the general rule, none of which are applicable in this case. *See, e.g.*, 15 M.R.S. § 3 (2025) (when a crime is committed "on the boundary between 2 counties or within 100 rods thereof," or when a victim is harmed in one county and dies in another, a grand jury in either county may indict the defendant); 17-A M.R.S. § 352(5)(E) (2025) (multiple thefts constituting a single "scheme or course of conduct" may be aggregated and charged as a single theft in any venue where one of the thefts was committed); 17-A M.R.S. § 703(3) (2025) (multiple forgeries constituting a single "scheme or course of conduct" may be aggregated and charged as a single crime in any venue where one of the forgeries was committed); 17-A M.R.S. § 708(3-A) (2025) (multiple acts of negotiating a worthless instrument constituting a single "scheme or course of conduct" may be aggregated and charged as a single crime in any venue where one of the acts was committed); 17-A M.R.S. § 805(1-B) (2025) (multiple acts of criminal mischief constituting a single "scheme or course of conduct" may be aggregated and charged as aggravated criminal mischief in any venue where one of the acts was committed); 17-A M.R.S. § 1106-A (2025) (permitting aggregation of multiple instances of possession of scheduled drugs within a forty-eight-hour period or distribution of scheduled drugs within a six-month period when either is part of a single "scheme or course of conduct" and permitting prosecution in any venue where one of the violations was committed).

[8] Cumberland County is in Judicial Region II and Sagadahoc County is in Judicial Region VI. *See* 4 M.R.S. § 19 (2025); Establishment of Judicial Regions, Me. Admin. Order JB-08-1 (effective July 1, 2008).

10

instead on determining where, as a legal matter, his crimes of eluding an officer and reckless conduct with a dangerous weapon were committed. For reasons that we will explain, we conclude that each of these crimes involved one continuous course of conduct in both Cumberland and Sagadahoc Counties; the crimes were therefore "committed" in both counties and could be indicted in either.

[¶17]  To reach this conclusion, we draw from our precedent recognizing that some crimes under Maine law are continuing offenses that may be committed in more than one place.  *See, e.g.*, *Gessner*, 2021 ME 41, ¶ 22, 255 A.3d 1041 (escape); *State v. Moulton*, 481 A.2d 155, 158-59 (Me. 1984) (theft); *Clewley v. State*, 288 A.2d 468, 474 (Me. 1972) (larceny).  For instance, in *Moulton* we stated that the crime of theft[9] "has a continuing nature."  481 A.2d at 158.  We explained that when "goods are stolen in one county and carried by the thief into another county, he may be prosecuted for the crime in either county" because "[i]n such circumstances, *the crime of theft is committed in both*

---

[9] *See* 17-A M.R.S.A. § 353 (1983).  This statute has since been amended. *See* P.L 2001, ch. 383, § 33 (effective January 31, 2003) (codified as subsequently amended at 17-A M.R.S. § 353 (2025)).  The statutory language we interpreted in *Moulton* is substantially the same as the current statutory language. *See Moulton*, 481 A.2d at 158. *Compare* 17-A M.R.S.A. § 353(1) (1983), *with* 17-A M.R.S. § 353(1)(A) (2025).

*counties.*" *Id.* at 159 (emphasis added) (quotation marks omitted). Therefore, we concluded that venue was proper in either county. *Id.*

[¶18] Coffill argues that our reasoning in *Moulton* is inapplicable to the present case because *Moulton* concerned a question of venue rather than grand jury territorial authority. We do not find this argument convincing. Until the enactment of section 1255-A in 2008,[10] grand jury territorial authority and venue were coextensive. *See True*, 330 A.2d at 790 ("The same factors which will bear on venue will also determine the grand jury's territorial authority."); L.D. 2197, Summary (123d Legis. 2008) (enacted as P.L. 2007, ch. 526, § 1 (effective June 30, 2008) (codified at 15 M.R.S. § 1255-A)) (stating that one of the purposes of the bill was to "define[] grand jury territorial authority expressly, rather than in terms of trial venue for the [court]"). Although they are now formally distinct concepts, *see* M.R.U. Crim. P. 21(a),[11] both concern where a crime should be prosecuted. And importantly, in each case, that question is answered by determining where the crime was "committed."

---

[10] Section 1255-A was enacted as part of An Act to Comprehensively Address Grand Jury Territorial Authority To Indict for Crimes, P.L. 2007, ch. 526, § 1 (effective June 30, 2008) (codified at 15 M.R.S. § 1255-A).

[11] Unlike grand jury territorial authority, which concerns the court's jurisdiction, venue is a procedural issue that is waived if not raised by motion before trial. *See* M.R.U. Crim. P. 12(b)(2); *State v. Newell*, 638 A.2d 1159, 1160 (Me. 1994) (explaining that "failure to call the attention of the [c]ourt, prior to trial, to improper venue results in a waiver" (alteration omitted) (quoting *State v. Baldwin*, 305 A.2d 555, 559 (Me. 1973))).

12

*Compare* 15 M.R.S. § 1255-A, *with* M.R.U. Crim. P. 21(a) ("The trial shall be in the county in which the crime was allegedly committed, except as otherwise provided by law."). Therefore, we find our caselaw addressing issues of venue, particularly as it pertains to the concept of a continuing offense, instructive in determining the extent of grand jury territorial authority in the present case.[12]

[¶19] Although we have identified specific crimes as continuing offenses for the purposes of determining *where* they were committed, *see Moulton*, 481 A.2d at 158-59; *Gessner*, 2021 ME 41, ¶ 22, 255 A.3d 1041, and *when* they were committed, *see State v. Jones*, 115 Me. 200, 201-02, 98 A. 659, 659-60 (1916) (holding that the sale of intoxicating liquors was a continuing offense when the defendant engaged in sales over a period of time), we have never had the opportunity to set out the general definition of a "continuing offense" under Maine law. The United States Supreme Court, in addressing the question of the proper venue for a federal prosecution, has stated that "[a] continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is

---

[12]   Although we need not determine for purposes of this case whether venue and grand jury territorial authority remain coextensive after the passage of section 1255-A, we note that the statute continues to link the concepts by expanding a grand jury's authority to cover any multicounty region that the Chief Justice creates "for venue purposes."  15 M.R.S. § 1255-A(2)(A).

committed and cognizable in each."[13] *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166 (1939) (quotation marks omitted).

[¶20] Several jurisdictions have adopted this formulation.[14] We have not explicitly done so, but our cases identifying continuing offenses hew closely to this approach by focusing on the continuous and ongoing unlawfulness of the defendant's actions. For instance, in concluding that escape is a continuing offense, we considered that an escaped prisoner is criminally liable not just for his initial escape from custody but also for his ongoing failure to return to custody. *See Gessner*, 2021 ME 41, ¶ 22, 255 A.3d 1041. Similarly, we have explained that theft is a continuing offense because when a person commits a

---

[13] Like this Court, the United States Supreme Court has also considered whether certain crimes are continuing offenses for the purpose of determining when they were committed. *See, e.g.*, *Smith v. United States*, 568 U.S. 106, 111 (2013) (noting that "conspiracy is a continuing offense"); *Toussie v. United States*, 397 U.S. 112, 114-24 (1970) (holding that failure to register for the draft is not a continuing offense for as long as the failure to register persists). This analysis typically arises when determining whether a statute of limitations bars prosecution, and thus involves considerations absent here. For instance, the Supreme Court stated in *Toussie* that "the doctrine of continuing offenses should be applied in only limited circumstances since . . . the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." 397 U.S. at 115 (alteration and quotation marks omitted). The Court reasoned that therefore an offense should be considered continuous only if "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* We do not find this reasoning applicable in the present case.

[14] *See State v. Gray*, 505 S.W.3d 160, 165 (Ark. 2016); *State v. Licari*, 43 A.2d 450, 452 (Conn. 1945); *State v. Decoite*, 323 P.3d 80, 82 (Haw. 2014); *Boyle v. State*, 170 N.E.2d 802, 808 n.4 (Ind. 1960); *State v. Nuss*, 454 N.W.2d 482, 485 (Neb. 1990); *State v. Amerigas Propane LP, Inc.*, 769 A.2d 401, 403 (N.H. 2001); *State v. Johnson*, 194 S.E. 319, 321-22 (N.C. 1937); *State v. McDonald*, 365 P.2d 494, 496 (Or. 1961); *State v. Lodermeier*, 481 N.W.2d 614, 620 (S.D. 1992).

14

theft, that person "continually violates the statute as long as he or she exercises unauthorized control over the item with the intent to deprive the owner of the property." *Ayotte v. State*, 2015 ME 158, ¶ 18, 129 A.3d 285.

[¶21]  Applying the Supreme Court's definition to the charges at issue, we have no trouble concluding that eluding an officer, like escape, is a continuing offense.[15]  There was evidence presented at trial that Coffill first encountered and began to flee from police officers on New Meadows Road in West Bath, Sagadahoc County, continued to flee from police officers on Route 1 in Brunswick, Cumberland County, and was ultimately apprehended by police in Topsham, Sagadahoc County.  There was also evidence that for the entirety of this flight, police officers were in continuous close pursuit of Coffill with their lights and sirens on.  Coffill engaged in one continuous unlawful act of eluding an officer that began in Sagadahoc County and continued without interruption through Cumberland County and back into Sagadahoc County.  Therefore, the offense was "committed and cognizable" in both Cumberland and Sagadahoc Counties.[16]  *See Midstate Horticultural Co.*, 306 U.S. at 166.

---

[15]  A person commits the offense of eluding an officer "if that person, after being requested or signaled to stop, attempts to elude a law enforcement officer by operating a motor vehicle at a reckless rate of speed that results in a high-speed chase between the operator's motor vehicle and a law enforcement vehicle using a blue light and siren." 29-A M.R.S. § 2414(3).

[16]  In addition to adhering to the reasoning of *Gessner* regarding what constitutes a continuing offense, our conclusion is also consistent with the approach of several federal courts to analogous

[¶22]  Turning to the charge of reckless conduct with a dangerous weapon, we conclude that on the facts of this case it is also a continuing offense, although it is a closer call.[17]  The crime of reckless conduct with a dangerous weapon implicates two statutes: the crime of reckless conduct, 17-A M.R.S. § 211(1), and an elevating-circumstances statute, 17-A M.R.S. § 1604(5)(A).  A

---

crimes.  *See, e.g.*, *United States v. Merino*, 44 F.3d 749, 754 (9th Cir. 1994) (holding that the crime of unauthorized flight to avoid prosecution is a continuing offense); *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996) (holding that the crime of illegal re-entry into the United States is a continuing offense because "[w]here a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is 'found' is a continuing offense because it is 'an unlawful act set on foot by a single impulse and operated by an unintermittent force,' to use the Supreme Court's language" (quoting *Midstate Horticultural Co.*, 306 U.S. at 166)); *United States v. Covarrubias*, 179 F.3d 1219, 1225-26 (9th Cir. 1999) (noting that "[t]he federal crime of transporting illegal immigrants was a continuing offense" for as long as the criminal defendants were transporting the individual).

[17]  We have defined crimes such as theft and escape as continuing offenses as a matter of law. *See, e.g.*, *Moulton*, 481 A.2d at 158-59; *Gessner*, 2021 ME 41, ¶ 22, 255 A.3d 1041.  However, we do not find it necessary to speak as broadly regarding reckless conduct with a dangerous weapon, whose continuing nature may depend on the particular facts of the case.  Other jurisdictions have concluded that certain crimes may be continuing offenses only in certain circumstances.  *See, e.g.*, *State v. Dennis*, 607 S.E.2d 437, 451-52 (W. Va. 2004) ("Several states have found sexual assault . . . to be a continuing offense in circumstances such as the case before us.  On a whole these courts have concluded that when the elements of an offense occur sequentially, are repeated or continue over a limited span of time or constitute a single chain of events, then the offense is a continuing crime by which venue lies both in the place where the defendant caused the victim to be fearful through use of force or threats of force and the place where the defendant engaged in the prohibited sexual act. . . . Accordingly we hold that the offenses of sexual assault . . . and robbery may constitute continuing offenses for purposes of criminal prosecution within the territorial jurisdiction of the state of West Virginia.  In order to be considered a continuing offense, the facts must demonstrate that at least one substantial or material element of the alleged sexual assault or robbery occurred within this state as part of a sequential chain of events." (footnote omitted)); *State v. Farr*, 7 A.3d 1276, 1279-83 (N.H. 2010) (concluding that, for the purpose of a double jeopardy analysis, charges of possession and delivery of child pornography were duplicative because the criminal conduct at issue was a continuing offense in circumstances where the defendant continuously possessed the video clip at issue before, during, and after delivering it to an undercover police detective); *People v. Okafore*, 527 N.E.2d 245, 246-249 (N.Y. 1988) (concluding that, for the purpose of a double jeopardy analysis, criminal possession of a weapon was not a continuing offense when the defendant's possession of the firearm at issue was uninterrupted, but he formed two separate criminal intents during the period in which he possessed the firearm).

person is guilty of reckless conduct "if he recklessly creates a substantial risk of serious bodily injury to another person." 17-A M.R.S. § 211(1). If the State proves that the reckless conduct was "committed with the use of a dangerous weapon," then section 1604(5)(A) elevates the offense by one class. 17-A M.R.S. § 1604(5)(A). "A motor vehicle can be used as a dangerous weapon." *State v. York*, 2006 ME 65, ¶ 8, 899 A.2d 780.

[¶23] Coffill concedes that he committed the crime of reckless conduct, and we agree that the evidence shows that he engaged in reckless conduct throughout the entirety of the police chase in both Cumberland and Sagadahoc Counties: he drove at an excessive speed, swerved around other vehicles, ran red lights, and in general "recklessly create[d] a substantial risk of serious bodily injury" to other drivers and law enforcement officers. *See* 17-A M.R.S. § 211(1). And Coffill was using the dangerous weapon at issue, his car, for the duration of the chase. Put another way, his entire course of conduct in driving recklessly and aggressively in his flight from police was one "continuous, unlawful . . . series of acts" that was "set on foot" on New Meadows Road when he first encountered law enforcement and "operated by an unintermittent force" until he was ultimately apprehended at the gas station in Topsham. *See Midstate Horticultural Co.*, 306 U.S. at 166. Because this single course of

conduct took place in both Sagadahoc and Cumberland Counties, we conclude that the crime of reckless conduct with a dangerous weapon was "committed and cognizable" in both counties. *See id.*

[¶24] Recognizing that his criminal conduct crossed county lines, Coffill suggested at oral argument that in such an instance, section 1255-A requires the State to divide the underlying conduct in two and seek separate indictments in each relevant county. But this approach, in addition to lacking statutory support, would run afoul of our precedent declaring that the State violates the constitutional prohibition against double jeopardy when it prosecutes a continuing offense "multiple times in different venues of the same court." *Ayotte*, 2015 ME 158, ¶¶ 11-13, 18-19, 129 A.3d 285 (citing *Mayo v. State*, 258 A.2d 269, 270 (Me. 1969)). Although a "crime that spans multiple counties may be prosecuted in any *one* of those counties, this does not permit the repeated prosecution of a criminal offense in multiple counties in our single statewide court . . . ." *Id.* ¶ 22 (citations omitted); *see also* Model Penal Code § 1.07(1)(e) (Am. Law Inst., Proposed Official Draft 1962), Westlaw (database updated 2025) ("[A defendant] may not . . . be convicted of more than one offense if . . . the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific

periods of such conduct constitute separate offenses."). The State's charging practice in this case—indicting Coffill with one count each of eluding an officer and reckless conduct with a dangerous weapon based on the entirety of his conduct during the police chase, rather than multiple counts based on discrete actions in each county—adhered to these requirements.[18]

[¶25] In sum, we conclude that each of Coffill's crimes was a continuing offense for which he could be indicted in either Cumberland or Sagadahoc County. As such, the Cumberland County grand jury did not exceed its territorial authority when it indicted him, and the trial court had jurisdiction over the charges.

## B. Reckless Conduct with a Dangerous Weapon

[¶26] Next, Coffill challenges the sufficiency of the evidence supporting his conviction for reckless conduct with a dangerous weapon. He concedes that

---

[18] We observe that the rules of criminal procedure also require this approach. Specifically, the rules provide that "[a]ll charges against a defendant arising from the same incident or course of conduct should be alleged in one indictment or information," M.R.U. Crim. P. 7(c), and that "[t]wo or more crimes should be charged in the same indictment . . . in a separate count for each crime if the crimes charged . . . are of the same or similar character or are based on the same act or transaction," M.R.U. Crim P. 8(a). *See also* M.R.U. Crim. P. 21(b)(4) (acknowledging that a crime may by committed in two or more counties and providing for transfer of venue between these counties when "in the interest of justice"). Rules of criminal procedure do not supersede substantive criminal laws, *see, e.g.*, *Eaton v. State*, 302 A.2d 588, 592 (Me. 1973), and accordingly they do not form the basis for our decision in this case. Nonetheless, our interpretation of grand jury territorial authority as it pertains to the offenses at issue in this case is consistent with the way that these crimes are to be charged under the Maine Rules of Unified Criminal Procedure, *see* M.R.U. Crim. P. 7(c), 8(a), 21(b)(4), a desirable result that serves the purposes of clarity, consistency, and judicial efficiency.

he engaged in reckless conduct but argues that there was insufficient evidence that he used his vehicle as a dangerous weapon.

[¶27] "When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we view the evidence presented at trial in the light most favorable to the verdict to determine whether any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. DesRosiers*, 2024 ME 77, ¶ 21, 327 A.3d 64 (quotation marks omitted).

[¶28] As we noted in our analysis of whether reckless conduct with a dangerous weapon can be a continuing offense, a person is guilty of the crime of reckless conduct "if he recklessly creates a substantial risk of serious bodily injury to another person," 17-A M.R.S. § 211(1), and the offense is elevated by one class if the State proves that it was "committed with the use of a dangerous weapon," 17-A M.R.S. § 1604(5)(A). For the purposes of section 1604(5)(A), "use of a dangerous weapon," which may include use of a motor vehicle, *York*, 2006 ME 65, ¶ 8, 899 A.2d 780, is defined as "the use of a firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which, in the manner it is used or threatened to be used is capable of producing death or serious bodily injury," 17-A M.R.S. § 2(9)(A) (2025).

[¶29] Because Coffill concedes that he engaged in reckless conduct during the police chase, the narrow issue we must decide is whether, viewing the evidence presented at trial in the light most favorable to the verdict, a jury rationally could find beyond a reasonable doubt that Coffill used or threatened to use his vehicle in a manner capable of producing death or serious bodily injury. *See* 17-A M.R.S. §§ 2(9)(A), 1604(5)(A).

[¶30] We conclude that the jury could so find and identify two specific incidents that support this finding. First, early in the chase, Coffill made a U-turn and drove directly at a pursuing officer, requiring the officer to brake quickly to avoid a collision. Second, at the end of the chase, Coffill drove into a police cruiser, resulting in injuries to the officer. Either of these events, when viewed in the light most favorable to the verdict, was sufficient for the jury to find that Coffill used his vehicle in a manner capable of producing death or serious bodily injury. *Cf. York*, 2006 ME 65, ¶ 9, 899 A.2d 780 (concluding that evidence that the defendant "used his van to push the victim's vehicle into heavy oncoming traffic, and made contact with that vehicle at least once" supported a finding that the defendant used his van as a dangerous weapon); *State v. Jones*, 405 A.2d 149, 150-51 (Me. 1979) (reasoning that there was sufficient evidence to sustain a conviction for reckless conduct with a

dangerous weapon where the defendant "attempted to block the road" with his car, "overtook [another vehicle] at a high rate of speed, cut in before he had completed passing," and then caused a collision).

The entry is:

Judgment affirmed.

Sanders Wommack, Esq. (orally), North Yarmouth, and Rory A. McNamara, Esq., Drake Law LLC, York, for appellant Thomas G. Coffill III

Jacqueline Sartoris, District Attorney, and Kristen M. Hughes, Asst. Dist. Atty. (orally), Cumberland County District Attorney, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2023-4984
FOR CLERK REFERENCE ONLY